### DEIGLEMAN *v.* NEW YORK, L. & W. RY. CO.

*(Superior Court of Buffalo, Equity Term.* November 8, 1890.)

OBSTRUCTION OF SURFACE WATER.

> Defendant railway company constructed an embankment of earth taken from either side thereof, leaving deep ditches in which surface water collected. The ditches were only partially drained, and at times the drains were obstructed by ice and snow, so that water was backed up on plaintiff's premises. Before the excavation of the ditches, the surface water ran off without injury to any one. *Held,* that defendant would be required either to fill up the ditches or to so drain them that the water would be carried off without injury to plaintiff.

Action by Rosa Deigleman against the New York, Lackawanna & Western Railway Company to restrain defendant from maintaining certain ditches on its land, and to recover damages for causing the overflow of plaintiff's land. Defendant's railway runs easterly, crossing Military road at about 15 feet above grade. The embankment east of Military road was constructed with earth taken from defendant's land on each side of the railway track, leaving a ditch (borrow pit) on each side about 50 feet wide and 15 feet deep at the westerly end, and extending easterly along the track about 650 feet. These ditches become shallower and narrower as they extend towards the east. Surface water from both sides of the railway drains into these ditches. As originally constructed they had no outlet. Afterwards, on complaint being made, defendant constructed drains from the westerly end of the ditches to Military road. These drains are about four feet wide and one foot deep, so that the water does not run freely through them from the ditches until it is about 18 inches from the top of the ditches. Military road is two feet below the level of the surrounding country. It is graded and paved, but is without a sewer. The curb is about one foot above the pavement, hence when the water in the ditches sinks to the level of the curb, it ceases flowing. The soil is clay, and there is nearly all the time about 10 or 12 feet of stagnant water in the ditches, which becomes offensive in hot weather. Before the railway was built there was no collection of surface water. Plaintiff's property is on the corner of Layer and Busch avenues, 566 feet south of the railway and 300 feet east of Military road. Sometimes the drains at the westerly end of the ditches are so

obstructed by ice and snow as to back the water upon plaintiff's premises so that it runs into her cellar.

*Frank R. Perkins*, for plaintiff.   *F. D. Locke*, for defendant.

HATCH, J.   It is conceded by defendant that it possesses no right to collect the surface water to an extent beyond the capacity of the pits, and discharge the overflow upon plaintiff's premises; and its claim is that it has not done such act, but that the water collected in the borrow pits is due to the fact of the construction of the embankment by which the water is turned back into the pit, and from thence it is conveyed in the Military road, its natural channel, and discharged therein.   Defendant has performed all the duties resting upon it, and if the overflow upon plaintiff's premises is due to the freezing and obstructing of Military road, even though by the water it turns therein, no liability attaches on account thereof.   It is undisputed that prior to the construction of the pits the water passed away without inflicting damage or producing discomfort to plaintiff; that there was no point at which it collected in any considerable amount, and such portions as passed into Military road were not discharged at any one point, but were from all points along the frontage of the land adjoining thereon.   It is also undisputed that since the construction of the pits the surface water has been drawn thereto, where it is discharged at one point, and in increased volume.   The oral testimony is undisputed that at times of heavy falls of rain, with melting snow and ice, the pits overflow and flood plaintiff's premises.   Defendant claims that the character of the pits, the opening of the ditch into Military road by which the water is lowered in the pits from 15 to 18 inches, show that such testimony is not reliable, as such overflow is physically impossible.   This is doubtless true when the water runs freely from the pit to Military road, and also when it passes freely through the box-drain at the farm crossing, but, with either of these closed or stopped up, the accumulation of water would quite readily overflow the bank and flood the land.   The court cannot say, from an observation made at a time when both ditches were open, that a condition of affairs did not exist as described at the time described by the witnesses, for, with the drains stopped, it is by no means a physical impossibility.   That there was an overflow, the evidence satisfactorily establishes.   Indeed it is not disputed.   Defendant insists that if there was an overflow it was not from the pit, but from Military road, due to the obstruction therein; that for this they are not liable for two reasons: *First*, this is the natural channel for the water, and has always been so; *second*, adjoining owners on either side have opened dead furrows therein, which has increased the body of water flowing therein, and that the water discharged from the pits has only in part produced the condition.   As to the latter ground, if turning the water into the street in the manner adopted, and in the quantity discharged, was wrongful, then defendant is not relieved from liability, because other wrong-doers have also contributed to the injury.   As to the first ground, it is to be observed that there has been a radical change made in the flow of the surface water by the construction of the pits.   Instead of its running off through the imperceptible channels, or being otherwise disposed of, it is now collected into comparatively large bodies of water, and from a large extent of territory.   Instead of being discharged from the land at numerous places, it is reduced to two, and flows therefrom at times, in a greatly increased volume.   Such condition has produced the injury complained of, and I think it can make no difference whether such overflow upon plaintiff's premises comes by reason of the stoppage of the drain connecting the pits, or the one leading into Military road, or by reason of the increased quantity of water turned into Military road, where, by action of the elements, it is obstructed and sets back upon plaintiff, for the primary cause is found in the collection of the surface water, which is, of necessity, discharged at a different place in increased volume, and by

reason thereof it is precipitated in considerable quantities upon the land of plaintiff, and inflicts damage. The authorities in this state have uniformly held that a person producing such result is liable for the damages occasioned thereby. *Bastable* v. *City of Syracuse*, 8 Hun, 587; *Noonan* v. *City of Albany*, 79 N. Y. 470; *Clark* v. *City of Rochester*, 43 Hun, 271.

These views and authorities in no wise conflict with the cases relied upon by defendant. *Goodale* v. *Tuttle*, 29 N. Y. 459, first announced the now conceded doctrine in this state, that an owner, for the amelioration of his own soil, may fill up and reclaim wet, marshy land, even though the effect is to prevent the flow of surface water thereon, and cause it to accumulate upon the land of an adjoining owner to his disadvantage. In *Vanderweile* v. *Taylor*, 65 N.Y. 346, the surface of defendant's lots descended towards plaintiff's lots, and the surface water ran thereon; plaintiff constructed on his lots, buildings; defendant's remained vacant, and the surface water ran down, settling against the wall of plaintiff's buildings, and soaked into his cellar, causing the wall to settle. It was held that defendant owed plaintiff no duty to drain his lot of surface water, or prevent its flow to the lower lot. But Judge EARL observes, in disposing of the question: "It must constantly be borne in mind that defendant had done nothing to increase or interfere with the flow of water from his land, and hence this case is entirely unlike *Rylands* v. *Fletcher*, [L. R. 3 H. L. 330,] * * * and like cases, where the owners of lands brought or gathered upon their land unusual quantities of water, which escaped and caused injury." 65 N. Y. 347. In *Barkley* v. *Wilcox*, 86 N. Y. 140, the doctrine of the civil law which holds that the rights of parties with respect to the flow of surface water are to be governed by the law of nature, and that the lower proprietor may not fill up his land so as to prevent its flow from his more fortunately situated neighbor, does not, in all cases, find application in this state. The precise distinction, however, already adverted to is recognized and stated. Id. 146–148. So in *Peck* v. *Goodberlett*, 109 N. Y. 180, 16 N. E. Rep. 350, which is the last statement of the court of appeals upon this subject that has fallen under my observation, the rule is again reiterated and applied. I find nothing in any of the cases cited by defendant, or in the numerous cases not cited which abound in the reports of this and other states, which modify or change the rule of the cases first cited, as applied to the facts of this case. I am therefore constrained to hold that the plaintiff is entitled to judgment commanding and directing the defendant to fill up its said pits and prevent the accumulation of surface water therein, or to construct suitable and proper drains from said pits so that the water collected therein may be carried off without detriment or damage to the lands of plaintiff.