# RAILWAY COMPANY *v.* LYMAN.

## Opinion delivered April 8, 1893.

1. *Nuisance—Evidence.*

    In an action against a railroad company to recover damages for an overflow of land resulting from the negligence of defendant in constructing an embankment without sufficient outlets for the escape of water, testimony that notice was given to defendant's road-master to remove the alleged nuisance is inadmissible where the question of notice is not an issue in the case, and where it does not appear that the road-master was a proper agent to whom notice could be given.

2. *Expert evidence—Value of crop.*

    A farmer suing for the destruction of his crop by overflow may give his opinion as to the value of the crop at the time of its destruction, and state as the basis of his valuation the usual yield of the land in crop seasons similar to that in question.

3. *Measure of damages—Destruction of growing crop.*

    The measure of damages for destruction of a growing crop is the actual cash value of the crop at the time of its destruction. *Railway Company* v. *Yarborough,* 56 Ark. 612, followed.

4. *Instruction—Error to single out evidence.*

    It is not error to refuse an instruction which singles out a particular class of testimony in the case and directs the jury to consider it in connection with the rest of the evidence.

5. *Watercourses—Duty of railway to provide outlets.*

    It was not error to refuse to charge the jury upon the theory that a railroad company is not liable for damages for failure to provide sufficient outlets for the escape of the water of all streams crossing its road-bed.

    *Railway Company* v. *Cook, ante,* p. 387, followed.

6. *Instruction—Discretion of court.*

    It is within the discretion of the trial court to refuse to caution the jury against entertaining a bias for plaintiff because defendant is a corporation, or a prejudice against defendant's witnesses because they were in its employment.

7. *Admissibility of expert testimony.*

    It was error to reject the testimony of an expert offered by defendant to show that it was not possible for defendant's embankment to back water over plaintiff's land, situated at the distance it was from such embankment.

Appeal from Nevada Circuit Court.

RUFUS D. HEARN, Judge.

Fox Lyman brought suit against the St. Louis, Iron Mountain & Southern Railway Company.

The complaint alleged that during the year 1888 the plaintiff was the tenant in possession of two plantations lying upon the banks of Red River, in Miller county, Ark., known as the Ogburn and the Glass-Chappell River plantations. On May 9, 1888, plaintiff had in cultivation 160 acres in cotton and 40 acres in corn on the Ogburn place, and 165 acres in cotton and 40 acres in corn on the Glass-Chappell River place; that on said day both plantations were overflowed by back water and the crops destroyed; that the defendant railway company had, in 1873, erected its embankments through Red River bottom in a negligent and unskilful manner, not leaving sufficient openings, and that, by reason of said negligent and faulty construction, and the manner in which its embankment was maintained without sufficient openings, the water had been caused to back up and stay longer upon his land than it otherwise would, and thus destroy his crops; that, by reason of such negligence, plaintiff had been damaged in the sum of $10,000.

The answer, admitting that the railway embankment had been constructed in 1873, contained a full, complete and definite denial of each and every allegation as set out in the complaint.

The court permitted Mrs. Cloud, a witness for plaintiff, to testify as follows: After stating that she had a conversation with one Conley, road-master for defendant in 1884, with reference to the railway embankment and the effects upon the lands above it, the following testimony was elicited:

"Q. State what you told Mr. Conley. A. I told him that the railroad was holding the water up on my

farms, and that it needed more openings there. Q. What farms did you allude to? A. Willow Bend, White Bend and Ogburn places. Q. What did Conley say? A. He told me to get some man to write me a petition and send it around and have the citizens sign it and send it to him and he would send it to headquarters for me." To the giving of this testimony defendant excepted.

In the examination of plaintiff upon the measure of damages, the court permitted, over the defendant's objection, the following testimony to be introduced:

"Q. In a season like 1888, what would have been the yield of that land in cotton? A. We usually gather a bale of cotton per acre. Q. Did you work that place in 1887? A. Yes, sir. Q. How much of that land did you have in cotton? A. One hundred and seventy acres. Q. How many bales of cotton did you make? A. One hundred and sixty-seven bales. Q. What was the ordinary average yield of that Glass River place, if you know? A. It would make between three-fourths and a bale to the acre. Q. How much corn would the ordinary average yield on the Ogburn place make? A. About thirty-five bushels. Q. How about the Glass River place? A. Something near the same. Q. What was the cotton worth in 1888? A. I sold cotton from eight to eight and three-quarter cents. Q. What was the value of the 160 acres of cotton, taking into consideration the productiveness of the land, the stage and condition the cotton was in at the time of its destruction—the reasonable market value of that cotton at that time? A. I could place no estimation on the crop at that time. Q. Upon what basis do you say the reasonable value of the crop was at that time? A. About $4000 for the 160 acres of cotton on the Ogburn place. Q. What was the value of the corn crop in 1888, at the time of its destruction by the overflow? A. The net proceeds of it would be about $500. Q. The

market value of the crop at that time? A. Yes, sir.
Q. What was the reasonable value of the 120 acres of
cotton on the Glass River place at the time of its de-
struction by the overflow? A. About $3000. Q. What
was the reasonable market value of that thirty-five acres
of corn? A. About $250 to $500."

The court, over defendant's objection, gave to the
jury, on behalf of plaintiff, the following instruction:

"2. If the jury find for the plaintiff, the measure
of damages will be the actual cash value of the crops
destroyed at the time of the destruction, if the jury find
any such to have been proven at the time of the destruc-
tion, with interest thereon at the rate of 6 per cent. per
annum from the date of such destruction."

The court refused to give the following instructions
asked by defendant, to which proper exceptions were
saved:

"12. The jury are instructed that the testimony of
capable and competent engineers, possessing skill and
personal knowledge of the surrounding country, obtained
by actual survey, is competent evidence in this case;
and the jury alone can weigh such evidence, and they
must consider it in connection with all the other evidence
in the case.

"13. The right of the owner of land as well as the
railway company to occupy and improve it in such man-
ner and for such purposes as he or it may see fit for the
better enjoyment of said land, either by changing the
surface or by erecting embankments, buildings, or other
structures thereon, is not restricted or modified by the
fact that his own land is so situated with reference to
that of adjoining owners that an alteration in the mode
of its improvement and occupation in any portion of it
will cause waters, which may be accumulated thereon by
rains and snow falling on its surface, or flowing on it
from the surface of adjoining lands, either to stand in

unusual quantities on adjacent lands, or to pass onto or over the same in greater quantities or in other directions than they were accustomed to flow; nor is it at all material in the application of this principle of law whether a party obstructs or changes the direction or flow of surface water by preventing it from coming within the limits of his land, or by erecting barriers or by changing the level of the soil so as to turn it off in a new course, after its coming within the limits of his land. The obstruction of surface waters, or an alteration in their flow, affords no cause of action in behalf of a person who may suffer loss and detriment therefrom against one who does not act inconsistent with the exercise of due dominion over his own soil.

"14. The jury are further instructed that it is the right of the land owner, as well as the railway company, to deal with all surface water, and all water mixed with the soil, in any manner they deem necessary for the improvement or better enjoyment of their own property, so as not wantonly or maliciously to injure the lands of their neighbors; and if, in so doing, in good faith, with no purpose of abridging, injuring or interfering with any of their neighbors' rights or property, they injure their neighbors, then they are not in any manner liable. If, therefore, you find that, in order to enable the defendant railway company to build, construct, use and operate its railway, it was necessary to build this embankment through the Red River bottom; that, in so doing, it built the same in good faith above the high water mark, in a skilful and workmanlike manner; that they put in and maintained openings, culverts, trestles and bridges, which at the time were ample for the passage of the usual flow of water, and if the jury further find that there was no proof that the work was done unskilfully, carelessly, maliciously or wantonly, then your verdict must be for the defendant."

"17. It is the imperative duty of the jury to try this case and decide it precisely the same as they would if it was a suit between two individuals; and the fact that the plaintiff is an individual and the defendant a corporation must make no difference with the jury. In considering and deciding the case, the jury should look solely to the evidence for the facts, and to the instructions of the court for the law of the case, and find their verdict carefully, without fear, prejudice or bias, and without reference to who is plaintiff and who is defendant.

"18. The jury are instructed that they have no right to disregard the testimony of defendant's witnesses, merely for the reason that they are in the employ of a railroad company. The credibility of witnesses should be judged of by the jury precisely the same as they judge of the credibility of other witnesses."

Verdict was returned for plaintiff, and judgment entered accordingly. Defendant has appealed.

*Dodge & Johnson* for appellant.

1. The court erred in allowing Mrs. Cloud to state conversations had with one Conley, the road-master. This was hearsay, and a mere expression of an opinion; therefore improper and incompetent. The testimony as to the yield and the value of crops *matured* was inadmissible to prove the measure of damages. 20 S. W. Rep. 516.

2. Van Frank and Knobel were accomplished civil engineers, and they should have been allowed to give their opinions as experts. 7 A. & E. Enc. Law. 491; 3 Abb. (N. Y.), 607; 2 A. & E. R. Cas. 649; 5 R. I. 250; 30 Wis. 316; 44 *id.* 495; 98 N. Y. 645.

3. The verdict is contrary to the evidence. The questions of fact are identical, with those in the Yarborough case, 20 S. W. Rep. 515.

4. The second prayer given at plaintiff's instance was erroneous. The measure of damages was not the *actual cash value* of the crops destroyed, but the market value, at the *time* and *place* where destroyed. 20 S. W. 515. It was error to refuse defendant's prayers thirteen and fourteen. 92 Mass. 106–9; 34 Conn. 466; 73 Ind. 287; 33 Kas. 274; 69 Me. 521; 137 Mass. 277; 50 N. H. 376; 86 N. Y. 140; 12 R. I. 75; 37 Vt. 104; 62 Wis. 112.

5. The verdict was excessive. 20 S. W. Rep. 516–17.

*Scott & Jones* for appellee.

1. This action is not brought for having constructed a nuisance but for maintaining or continuing it, and the testimony of Mrs. Cloud was admissible to prove notice to remove it. Wood on Nuisances (2d ed.), sec. 838.

2. The testimony of the so-called experts was properly rejected. 20 S. W. Rep. 515.

3. The instruction as to the measure of damage is similar to the one approved in 20 S. W. Rep. 515. The jury could have found and did find that the crops would have matured, had it not been for the backing up of the waters by the railway embankment; and herein this case differs from the Yarbrough case. *Ib.*

MANSFIELD, J. The complaint alleges that the growing crops of the plaintiff on two plantations situated on the south bank of Red River were destroyed on the 9th day of May, 1888, by water backed onto them by the defendant's embankment across the river bottom; and that the injury thus sustained resulted from the negligence of the defendant in constructing the embankment without sufficient openings to permit the escape of the water.

The answer denies the negligence charged, and denies that the crops were destroyed in the manner stated

in the complaint. The cause was tried by a jury, and the company appeals from a judgment for the amount of their verdict.

1. Taking the grounds assigned in the motion for a new trial in the order in which they have been presented by the argument of counsel, the first is that the court erred in permitting Mrs. Cloud, the owner of one of the plantations, to testify that in 1884 she complained to the defendant's road-master that the railway embankment was holding the water upon her lands, and that it needed more openings; and that he replied by saying that if she would procure a petition from the citizens, he would send it for her to the headquarters of the company. The only ground on which the appellee's counsel justify the admission of this testimony is that it proved a notice to the defendant to remove the alleged nuisance. But the pleadings made no issue as to whether such notice was given, and if that question had been raised on the trial, it does not appear that the road-master was an agent of the company to whom the notice could have been properly given. The conversation between himself and Mrs. Cloud was therefore incompetent, and should have been excluded.

2. Under the ruling next complained of, the plaintiff was permitted to give in evidence his opinion as to the value of the crops at the time of their destruction, and to state as the basis of his valuation the usual yield of the lands in crop seasons similar to that of 1888. The witness being a farmer, his opinion was admissible to prove the value of the crop, and it was proper to permit him to state the facts from which his conclusion was arrived at, as these would aid the jury in determining whether his estimate was correct. *Phillips* v. *Terry*, 5 Abb. Pr. (N. S.), 327. While the damages recoverable could not exceed the actual value of the crops at the date of the injury, with legal interest, it was not im-

*Margin notes:* 1. Admissibility of evidence.  2. Opinion of farmer as to value of crop.

proper that the jury, in estimating that value, should consider the probable value at maturity if they believed from the evidence that the crops would have matured but for their loss in the manner alleged in the complaint. This view is not in conflict with the decision in Yarborough's case determined at the last term. *Railway Co.* v. *Yarborough*, 56 Ark. 612. In that case there was no evidence from which the jury could have found that the crops would have matured if they had not been destroyed by water backed upon them by the railway; and the judgment was reversed because it was obvious that the damages recovered were assessed on the basis of the value the crops would have had at maturity. But in the present case there was testimony from which the jury might have found that the lands were not overflowed at all directly from the river, and that the crops might have matured if they had not been destroyed by the back water.

3. Damages for crop destroyed.

3. The only part of the court's charge excepted to is embraced in its second instruction; and the rule of damages which that instruction states was approved in the case cited above.

4. Error to single out evidence.

4. The court refused to give certain instructions requested by the defendant numbered respectively 12, 13, 14, 17 and 18. There was no error in rejecting either of these instructions. By the 12th the jury would have been told that the testimony of certain witnesses was competent, and should be considered with all the other evidence. From the action of the court in admitting the testimony referred to, the jury must have understood that it was to be treated as competent, and they could not have refused to consider it without disregarding the court's first instruction which was applicable to all the evidence. The instruction was therefore unnecessary, and the jury might have construed it as attaching a special importance to that part of the testi-

mony to which it applied. Neither the thirteenth nor the fourteenth instruction contained any accurate statement of the law pertinent to the subject matter of the trial. As showing the inaccuracy of both these instructions, we cite the recent decision of this court in a similar case. *Railway Co.* v. *Cook, ante,* p. 387. The seventeenth and eighteenth instructions appear to have no other object than that of cautioning the jury against entertaining a bias for the plaintiff because of the fact that the defendant is a corporation, or a prejudice against the defendant's witnesses because they were in its employment. The court doubtless regarded these instructions as uncalled for, and it was entirely within its discretion to refuse them.

5. The next assignment is upon exceptions reserved to the rulings of the court in excluding the opinions of Knobel and Van Frank offered in evidence for the purpose of showing that the defendant's road-bed was incapable of backing water upon the plaintiff's lands. Both these witnesses were civil engineers of long experience, and their qualifications to testify as experts were not questioned. Their opinions were admitted as to a part of the embankment, but were excluded as to a section of it with reference to which they were of equal or greater importance to the defendant. For convenience we refer only to the testimony of Knoble, on which the question to him was based, as the ruling to be made upon the exclusion of his opinion will apply equally to the rejection of Van Frank's.

There is a declivity in the lands of the plantations as they recede from the river in the direction of the railway, and they are situated in the vicinity of numerous lakes and bayous. When the waters of the river are high they pass out of its banks at low places and flow into these lakes and bayous. The latter are thus made to overflow the low lands adjacent to their banks, and it

*Margin notes:*
5. Duty of railway to provide outlets for water-courses.

6. Discretion of court in charging jury.

7. Admissibility of expert testimony.

seems that currents sometimes pass from the lakes over the plantations into the river. Other currents are toward the railway, which passes through the bottom in a southwesterly direction from Fulton where it crosses the river. Its line is nearly straight, and lies south and east of the plantations and of the lakes and bayous. It is also south of a ridge known as Homan ridge which begins at or near a place on the line of the road known as the Edmunds field several miles northeast of the nearest of the two plantations and extends to the river at a point above them both. Knoble testified that he located the railway through the bottom in 1873, on its present line; that, on examination then made, he found high-water marks indicating that all the lands lying north of Homan ridge were subject to overflow, and that he constructed the railway embankment south of that ridge so that it would be protected by the ridge; that the ridge is higher than the embankment and that none of the lands north of the ridge could be affected by the road-bed after it passes the Edmunds field, for the reason that the ridge is between them and the embankment. The witness also stated that he made a topographical survey of the Red River bottom in 1891, and stated the relative height of the embankment and the lands north of it, including the plaintiff's plantations, as shown by the levels he ran. He also stated the number, length and depth of the trestles between Fulton and the Edmunds field, and gave in detail the results of his last survey and of the observations he made with the view of ascertaining the height and flow of the waters which had previously covered the bottom north of the railway. He was then asked to state, from the examinations thus made and from his experience as an engineer, whether in his opinion it was possible for the railway embankment between Fulton and the Edmunds field to back water over the plaintiff's plantations situated respectively at a distance of four and ten miles. The

court excluded the answer; and we think the defendant's exception to the action of the court in doing so is well founded. We have ruled at the present term that it was error to permit a non-expert to answer a similar question, and the reason stated for the decision was that the question could not be properly answered except by one possessing special knowledge and skill. *Railway Co.* v. *Cook, ante,* p. 387. Here the witness was competent to answer, by reason of an experience peculiar to his profession; and the question related to an essential matter upon which the evidence was conflicting. The exclusion of the answer and of the other similar testimony which the court rejected was therefore an error; and for this we conclude that the judgment ought to be reversed, and the cause remanded for a new trial. 1 Greenleaf, Ev. sec. 440, note; *Moyer* v. *N. Y. Cent. R. Co.* 98 N. Y. 645; *Grigsby* v. *Clear Lake Water Co.* 40 Cal. 396; *Phillips* v. *Terry,* 5 Abbott's Pr. (N. S.), 327; *Clason* v. *Milwaukee,* 30 Wis. 316; *Ball* v. *Hardesty,* 38 Kas. 540; *Commonwealth* v. *Sturtivant,* 19 Am. Rep. 401; *Railroad Company* v. *Schultz,* 43 Ohio St. 270, 283; *Hammond* v. *Woodman,* 66 Am. Dec. 242, note.

It is so ordered.