(85 App. Div. 182.)

### WICKHAM v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Third Department. June 30, 1903.)

1. RAILROADS—CONSTRUCTION OF ROADBED—DISCHARGE OF SURFACE WATER—
    INJURY TO PROPERTY.
        A railroad cannot divert the natural flow of surface water, and discharge it in such a way as to cause injury to the premises of another, even though such diversion is necessary to the preservation of its roadbed, but it is its duty to provide means to carry the water from such premises into its natural channel and outlet.

2. SAME—ACTION FOR DAMAGES—EVIDENCE—LETTERS—PROOF OF AUTHORITY.
        In an action against a railroad for injury caused to plaintiff's premises by the discharge of surface water from defendant's roadbed, it was error to admit in evidence a letter relative to such damage, written on a letter head of defendant's superintendent, and signed "Superintendent," without first proving who the author of the letter was, and that he was authorized to act on defendant's behalf.

Appeal from Trial Term, Schuyler County.

Action by Mortimer L. Wickham against the Lehigh Valley Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Bissell, Carey & Cooke (Lyman M. Bass, of counsel), for appellant.

Waldo F. Bishop, for respondent.

HOUGHTON, J. The action was originally brought in Justice Court, where judgment was rendered against the defendant, whereupon an appeal was taken to the County Court of Schuyler county, and a new trial demanded. The action was brought by the plaintiff to recover damages for flooding and washing out his vineyard and orchard, caused, as was claimed, by the defendant's collecting in an artificial channel, from surrounding lands, an unusual quantity of surface water, and discharging it upon plaintiff's premises. The plaintiff's farm and orchard and the defendant's railway embankments were upon a hillside. The plaintiff's premises were situated on the

slope below the defendant's railway embankment. The defendant constructed its railway in 1890, and the testimony shows that prior to that time the surface water worked gradually from the hillside down towards plaintiff's premises, and found its way through a natural ravine into Cayuga Lake. In the construction of its railway, the defendant turned the surface water from the hillside above, along the upper sides of its embankment, through a waterway made under its tracks, into a small ditch which ran through intervening lands to and across the highway adjacent to plaintiff's premises, and thence along the highway for a short distance to the ravine. This ditch had been sufficient to carry off all of the surface water which percolated to it, prior to the construction of the railway embankment. After the surface water from the surrounding territory had been diverted by the defendant to this ditch, the increased volume of water enlarged the size of the ditch very greatly, and in November, 1900, the overflow caused serious damage to the plaintiff's premises. The water was carried under the highway by a sluiceway which the defendant had assumed to construct in conjunction with, or by the acquiescence of, the highway commissioner. The plaintiff's premises were not adjacent to the defendant's railway, and the defendant contended that it placed the waterway, which is also used as a cattle pass, in the place where it did, at the direction of the owner of the lands on each side of its right of way, and therefore was not responsible for any damage that might occur by reason of the collection and discharge of water upon premises below. The defendant also contends that, because it is a railway corporation, it was not liable for the collection and discharge of unusual quantities of surface water, unless it did it in a negligent and unskillful manner.

On the facts which appear, we think the defendant had no right to collect surface water in unusual quantities from its lands and lands of others, into an artificial channel, and discharge it upon the lands of the plaintiff. An individual would not have that right, nor does a municipal corporation. Noonan v. City of Albany, 79 N. Y. 470, 35 Am. Rep. 540. The authority given to a railway corporation to construct and maintain its road does not confer license upon it to commit a nuisance to the injury of an individual, although the construction and operation of the road cannot be accomplished without such act. Cogswell v. N. Y., N. H. & H. R. Co., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701; Booth v. R., W. & O. T. R. Co., 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552. Drainage is a necessity to the preservation of a roadbed, but a railway corporation cannot by artificial means interfere with a natural flow of water to serve its own purposes, unless it sees to it that it is done in such a way as not to unnecessarily do an injury to another. Mitchell v. N. Y., L. E. & W. R. Co., 36 Hun, 177; Drake v. N. Y., L. & W. R. Co., 75 Hun, 422, 27 N. Y. Supp. 739; Deigleman v. N. Y., L. & W. R. Co. (Super. Buff.) 12 N. Y. Supp. 83. The construction and keeping open of the sluiceway was the means which the defendant took to carry the water which had collected away from the plaintiff's premises. The action of the water had very greatly enlarged the original ditch, and it became the defendant's duty to provide means, by a

sluiceway, or in some other manner, to carry the water away from plaintiff's premises into its natural channel to the lake.

But there were errors committed upon the trial which demand a reversal of the judgment.

The plaintiff was permitted, over the defendant's objection, to introduce in evidence a letter purporting to be written to the plaintiff by O. O. Esser in December, following the overflow of his lands. This letter was as follows:

> "Lehigh Valley Railroad.   Pa. and N. Y. Division.   Office of the
>                            Superintendent.
>                                      "Sayre, Pa., December 5, 1900.
>           "O. O. Esser, Superintendent.
>           "Subject: Damage to Vineyard.
> "Dear Sir: I have your letter of the 3d inst. with reference to the creek at Fenton's siding becoming clogged at the heavy rain, which caused it to overflow its banks, thereby damaging your vineyard, and in reply would say that I will have the matter attended to as soon as possible.
>           "Yours truly,               [Signed]      O. O. Esser, Superintendent."

There was no proof that Esser was the superintendent of the defendant. There was the printed heading, to be sure, and the signature, with the addition of the word "Superintendent." But this did not prove that he was the superintendent of the defendant, or had any authority to act in the matter. The objection to the admission of the letter was that it was incompetent and immaterial, and could not in any manner bind the defendant. After the letter was received, a motion was made to strike it from the record on the same grounds, which was denied, to both of which rulings the defendant duly excepted. The jury may very well have interpreted the letter as an admission by the defendant that it was liable for the damage caused to the plaintiff's vineyard, and that his claim would soon be settled. Even if the letter was admissible as an admission by an officer of the defendant after the damage had occurred, which is doubtful, it certainly was not permissible to receive it in evidence until proof had been offered as to who Esser was, and that he was authorized to act in behalf of the defendant corporation. Alexander v. Cauldwell, 83 N. Y. 480. In an action against a town for injuries alleged to have been caused by the negligence of the highway commissioner, it is not competent to prove conversations of the plaintiff with the highway commissioner, or with the members of the town board, in relation to a settlement. Davis v. Town of Rochester, 49 N. Y. St. Rep. 533, 21 N. Y. Supp. 215. It being necessary because of this error to reverse the judgment and grant a new trial, it is unnecessary to consider further exceptions urged by the defendant.

The judgment and order should be reversed, and a new trial granted, with costs to abide the event. All concur.