CHICAGO, R. I. & P. RY. Co. v. JOHNSON.

No. 2200.     Opinion Filed March 8, 1910.

(107 Pac. 662.)

1. WATERS AND WATER COURSES—Diversion of Surface Water —Liability to Injured Landowner. If a railroad company so constructs its roadbed and ditches as to divert surface water from its usual and ordinary course, and by its embankment, ditches, or artificial channels caused such water to be conveyed to a particular place, and thereby overflows the land of another proprietor which, before the construction of such road, ditches, or channels, did not overflow, the company will be liable to such proprietor for the injury.

2. TRIAL — Appeal and Error.— Harmless Error — Instructions. Where the instructions of the court are subdivided into different paragraphs and numbered, though some of them may be incomplete, yet, if they are not in conflict with others therein and

harmonize therewith, such additional paragraphs supplementing what was lacking in the other, and under that event stating the correct rule of law, the same will not operate as a reversible error.

(a) Though an instruction be erroneous, if such error consist in being more favorable to the plaintiff in error than he was entitled to, the same was error without injury and will not constitute a reversal of the cause.

3.    DAMAGES—Evidence—Opinion Evidence—Value of Growing Crop. The measure of damages for the destruction of a growing crop is its value at the time and place, and in the condition it was in, when destroyed.

(a) The witness being an experienced farmer, his opinion is admissible to prove the value of a growing crop, and it is further proper to permit him to state the facts from which his conclusion was arrived at in order to aid the jury in determining whether or not his estimate was correct.

(b) It is permissible as a means of arriving at the value of a growing crop to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the expense of such cultivation, as well as the cost of its preparation and transportation to market, the difference between the value of the probable crop in the market, and the expense of maturing and placing it there in most cases will give the value of the growing crop with as much certainty as can be attained by any other method.

(c) **Quaere** as to whether or not it is also permissible to prove the rental value of the land and the cost of breaking. seeding, planting, and cultivation up to the time of the destruction of the immature, growing crop is a permissible basis to submit to the jury to be considered in connection with the basis in 3 (b) is not determined.

(Syllabus by the Court.)

*Error from District Court. Comanche County; F. E. Gillette, Judge.*

Action by H. C. Johnson against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*M. A. Low, C. O. Blake, H. B. Low,* and *W. C. Stevens,* for plaintiff in error.—On diversion of surface waters: *Gibbs v. Williams,* 25 Kan. 214; *Mo. Pac. Ry. Co. v. Renfro* (Kan.) 34 Pac. 802; *Walker v. Railroad Co.,* 165 U. S. 593; *Cox v. Railroad Co.,* 174 Mo. 588; *Railroad Co. v. Speelman.* 12 Ind. App. 372; *Rail-*

*way Co. v. Steck* (Kan.) 33 Pac. 601; *Gannon v. Hargadon,* 92
Mass. 106; *Werner v. Popp* (Minn.) 102 N. W. 366; *Railroad Co.
v. Davis,* 73 Miss. 678; *Benson v. Railroad Co.,* 78 Mo. 504; *Mor-
rissey v. Railroad Co.,* 38 Neb. 406; *Clauson v. Railway Co.* (Wis.)
82 N. W. 146; *Salliotte v. King Bridge Co.,* 122 Fed. 378. On evi-
dence to establish value of growing crops: *Railway Co. v. Benitos,*
59 Tex. 326; *Hays v. Crist,* 4 Kan. 350.

B. M. *Parmenter, C. M. Myers, C. O. Clark,* and *John A.
Remy,* for defendant in error.—On diversion of surface waters:
*Davis v. Fry* (Okla.) 78 Pac. 184; *Pye v. Mantako,* 1 Am. St. Rep.
673; *Railroad Co. v. Lackey,* 48 Am. St. Rep. 590; *Mayor v. Sykes,*
94 Ga. 30; *Railroad Co. v. Wachter,* 123 Ill. 440; *Railroad Co. v.
Anderson,* 79 Tex. 427; *Abbott v. Railroad Co.* (Mo.) 53 Am. St.
Rep. 588; *Sullins v. Railroad Co.* (Iowa.) 7 Am. St. Rep. 503;
*Railway Co. v. Marley* (Neb.) 13 Am. St. Rep. 488; *Woods v.
Moulton* (Cal.) 80 Pac. 93.

WILLIAMS, J.  The highest courts of the following states,
recognizing the rule that the right to divert surface waters under
the common law both in England and America had been qualified,
hold that a proprietor, without a grant, cannot collect surface
water into an artificial channel or volume and pour it upon the
land of another to his injury, or by means of ditches or other arti-
ficial means cause the same to flow upon the lands of another where
it would not otherwise go to his injury: *Crabtree v. Baker,* 75
Ala., 91, 51 Am. Rep. 424; *Springfield & Memphis R. Co. v. Henry,*
44 Ark. 360; *Livingston v. McDonald,* 21 Iowa, 160, 89
Am. Dec. 563; *Sullens v. Chicago, etc., Ry. Co.,* 74 Iowa,
659, 38 N. W. 545, 7 Am. St. Rep. 501; *Robertson v.
Daviess Gravel Road Co.,* 116 Ky. 913, 77 S. W. 189, 25 Ky. Law
Rep. 1114; *Gregory v. Bush,* 64 Mich. 37, 31 N. W. 90, 8 Am. St.
Rep. 797; *Hogensen v. St. Paul, M. & M. R. Co.,* 31 Minn. 224, 17
N. W. 374; *Sheehan v. Flynn,* 59 Minn. 436, 61 N. W. 462, 26 L.
R. A. 632; *Kelly v. Dunning,* 39 N. J. Eq. 482; *Bowlsby v. Speer,*
31 N. J. Law, 351, 86 Am. Dec. 216; *McCormick v. Kansas City,
St. Joseph & Council Bluffs R. Co.,* 70 Mo. 359, 35 Am. Rep. 431;

Id., 57 Mo. 433; *Porter v. Durham et al.,* 74 N. C. 767; *Fremont, E. & M. V. R. Co. v. Marley,* 25 Neb. 138, 40 N. W. 948, 13 Am. St. Rep. 482; *Chalkley v. Richmond,* 88 Va. 402, 14 S. E. 339, 29 Am. St. Rep. 730.

The following courts, adhering to the ancient common-law rule, without qualification, to the effect that no cause of action can arise in any case from throwing back surface waters on the dominant estate, also hold that if a railroad company so constructs its roadbed and ditches as to divert surface water from its usual and ordinary course, and shall cause by its embankments and ditches such water to be conveyed to a particular place, and thereby overflow land which before the construction of the road did not overflow, the company will be liable to the landowner for the injury: *Adams v. Walker,* 34 Conn. 466, 91 Am. Dec. 742; *Chorman v. Queen Anne's R. Co.,* 3 Pennewill (Del.) 407, 54 Atl. 687; *Curtis v. Eastern R. R. Co.,* 98 Mass. 428; *Deigleman v. New York, L. & W. Ry. Co.,* (Super. Buff.) 12 N. Y. Supp. 83; *Foot et al. v. Bronson et al.,* 4 Lans. (N. Y.) 47; *Wickham v. Lehigh Valley R. Co.,* 85 App. Div. 182, 83 N. Y. Supp. 146; *Barkley v. Wilcox,* 86 N. Y. 140, 40 Am. Rep. 519; *Noonan v. City of Albany,* 79 N. Y. 470, 35 Am. Rep. 540; *Jones v. Seaboard A. L. R. Co.,* 67 S. C. 181, 45 S. E. 188; *Mitchell v. Bain,* 142 Ind. 604, 42 N. E. 230; *Templeton v. Voshloe,* 72 Ind. 134, 37 Am. Rep. 150; *Davis v. City of Crawfordsville,* 119 Ind. 1, 21 N. E. 449, 12 Am. St. Rep. 361; *Schuster v. Albrecht,* 98 Wis. 241, 73 N. W. 990, 67 Am. St. Rep. 804; *Noyes et al. v. Cosselman et al.,* 29 Wash. 635, 70 Pac. 61, 92 Am. St. Rep. 937. The universal rule in the states adopting the civil law and the great weight of authority in the common-law states support the foregoing rule. And this, too, seems to be the rule in England. See decision by Queen's Bench Division on March 31, 1884, holding to that effect. *Whalley v. L. & Y. Ry. Co.,* 13 Law Rep. (Q. B.) 131. See, also, *Baird v. Williamson* (Common Pleas) 33 Law. J. 101; 3 Farnham on Waters and Water Courses, secs. 885-6, pp. 2574, 2578.

In the case of *Frisbie v. Cowen,* 18 App. D. C. 381, decided by the Court of Appeals of the District of Columbia on the 4th

day of June, 1901, Mr. Chief Justice Alvey, in delivering the opinion of the court, said:

"Whatever difference there may be supposed to exist as between the rule of the civil law and that of the common law in regard to the manner of treating surface water naturally flowing from an upper to a lower tenement, such difference can be of no importance in a case like the present. This, as appears from the facts we have stated, is not the case of the natural flow of surface water, arising from natural causes only, and flowing without artificial means, but is the case of the gathering and concentration of surface water from an extensive area, into an artificial channel or drain, and discharging it upon the premises of a lower proprietor to his injury  This, according to all principle, is regarded as a wrong for which the law affords a remedy.  The principle is settled, both by the English and American decisions, that where the higher owner collects the surface water in one body, or sends it down upon the lands of a lower owner in a different manner from that in which it is accustomed to flow, or in a concentrated form, or in unnatural quantities, he is liable for all the damages sustained therefrom by such lower proprietor.  The servitude is to have the waters pass over the land in their natural flow, and a discharge of them in any other manner is a violation of the rights of the lower owner.  Indeed, it is laid down as text law 'that one has no right by an artificial structure of any kind upon his own land to cause the water which collects therein to be discharged upon his neighbor's land.  *.  *  *'  In a recent case in the Court of Appeals of England, that of *Whalley v. Lancashire & Yorkshire R. R. Co.*, 13 Q. B. Div. 131, the question has been very fully considered and the principle applied.  There, by reason of a very severe rainfall, a quantity of water was accumulated against one of the sides of the defendant's railway embankment to such an extent as to endanger the embankment, and, in order to protect their embankment, the defendants cut trenches in it by which the water flowed through and went ultimately onto the land of the plaintiff, which was on the opposite side of the embankment and at a lower level, and flooded and injured it to a greater extent than it would have done had the trenches not been cut.  In an action for damages for such injury, the jury found that the cutting of the trenches was reasonably necessary for the protection of the defendant's property, and that it was not done negligently.  But the court was unanimous in holding that, though the defendants had not brought the water on their

land, they had no right to protect their property by transferring the mischief from their own land to that of the plaintiff; that they had no right to sacrifice the property of their neighbor in order to protect their own; and, therefore, as said by the court, upon the plainest principle of right and justice, the defendants were liable."

In the case of *C., R. I. & P. R. Co. v. Groves*, 20 Okla. 101, 93 Pac. 755, 22 L. R. A. (N. S.) 802, this court said:

"That the owner of the land cannot collect the water into an artificial channel or volume and pour it upon the land of another to his injury. *Davis v. Fry*, 14 Okla. 340, 78 Pac. 183, 69 L. R. A. 460; *Davis. v. City of Crawfordville*, 119 Ind. 1, 21 N. E. 449, 12 Am. St. Rep. 361; *City of Evansville v. Decker*, 84 Ind. 325, 43 Am. Rep. 86; *Patoka Township v. Hopkins* [131 Ind. 142, 30 N. E. 896] 31 Am. St. Rep. 417; *Rychlicki v. City of St. Louis*, 98 Mo. 497; 11 S. W. 1001, 4 L. R. A. 594. 14 Am. St. Rep. 651; *Fremont, etc., R. R. Co. v. Marley*, 25 Neb. 138, 40 N. W. 948, 13 Am. St. Rep. 482; *Chalkley v. City of Richmond*, 88 Va. 402, 14 S. E. 339, 29 Am. St. Rep. 730; 2 Dillon on Municipal Corporations, § 1051; Gould on Waterways, § 271."

Whilst that expression may have been *obiter* in that opinion, yet it is supported by the great weight of authority, and we approve the same as a correct rule to be followed by this court. The rule also is the same whether the ditches or artificial channels be constructed or made on the right of way at the time of the construction of the road as a part thereof or afterwards in the maintenance and operating of the same. *Wickham v. Lehigh Val. R. Co.*, supra; *Deigleman v. N. Y., L. & W. Ry Co.*, supra; *Fremont, E. & M. V. R. Co. v. Marley*, supra; *Springfield & Men. R. Co. v. Henry*, supra; *Curtis v. Eastern R. R. Co.*, supra; *Gilbert v. Savanah, G. & N. A. R. Co.*, 69 Ga. 396; *Johnson v. Atl. & St. L. R. Co.*, 35 N. H. 569, 69 Am. Dec. 560; *Eaton v. B. C. & M. R. R.*, 51 N. H. 504; *Thompson v. Androscoggin Imp. Co.*, 54 N. H. 545; *Hooker v. New Haven & Northampton Co.*, 14 Conn. 146, 36 Am. Dec. 477; *Drake v. C., R. I. & P. Ry. Co.*, 63 Ia. 302, 50 Am. Rep. 746.

We reach the conclusion that the evidence on the part of

the defendant in error tending to show that the plaintiff in error had constructed a ditch extending over the farm of the defendant in error as well as the adjoining proprietors, accumulating the waters from such farms and carrying them to an artificial opening in defendant's roadbed through which it was poured in and upon the portion of the farm of the defendant in error lying on the opposite side of the railroad to his damage, there was no error in refusing to direct a verdict in favor of the railroad company.

It is further insisted that the court erred in its instructions to the jury. Paragraph 4 contains the following:

"If you find from the evidence that the defendant * * * changed its ditches and culverts so as to gather the accumulating waters by reason of its ditches from the adjoining land and conduct the same through its ditches and culverts to the plaintiff's land, thereby greatly increasing the water upon the plaintiff's land in the times of heavy rain and so as to cause the plaintiff damage in the manner stated in this petition, then your verdict should be for the plaintiff. * * *"

Paragraph 6 is, in part, as follows:

"* * * If you find the damage to have been caused by the gathering of waters in defendant's ditches and the precipitation of the same on the land of plaintiff in increased and unnatural quantities * * *".

But paragraph 8 is as follows:

"You are instructed that the plaintiff must show, by a preponderance of evidence, that the defendant wrongfully, negligently, and not necessarily enlarged its culverts and openings through its roadbed, and wrongfully and unnecessarily turned surface waters upon plaintiff's land in unnecessarily large quantities to plaintiff's damage and injury, or you should find for the defendant."

Paragraph 9 is also, in part, as follows:

"* * * But for the plaintiff to recover he must show by a preponderance of the evidence that the said defendant maintained its said roadbed and wrongfully turned waters down on plaintiff's land, and that the waters so turned down were in unnecessarily great quantities."

When the charge is considered as a whole, though not commending the same as a model, we think the plaintiff in error has no well-grounded right to complain. It may be that paragraph 6 was more favorable than it was entitled to; but, if so, it is error in its (plaintiff in error) favor and not prejudicial.

This action is to recover damages for injuries to the growing crops of the defendant in error by the overflowing of his land alleged to have been caused by ditches constructed by the defendant in error. In such cases, the general rule appears to be that the damages are to be estimated as of the time of the injury, and that the measure thereof is compensation for the value of the crops in the condition in which they were at such time. Sutherland on Damages (3d Ed.) vol. 4, p. 2997, § 1023. Section 2907, p. 711, Comp. Laws Okla. 1909, seems to be in harmony with said rule.

In the case of *Int. & G. R. Co. v. Pape*, 73 Tex. 501, 11 S. W. 526, the court said:

"It seems to us that as a general rule the most satisfactory means of arriving at the value of a growing crop is to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the expense of such cultivation, as well as the cost of its preparation and transportation to market. The difference between the value of the probable crop in the market and the expense of maturing, preparing, and placing it there will, in most cases, give the value of the growing crop with as much certainty as can be attained by any other method."

See, to the same effect, *Galveston, H. & S. A. R. Co. v. Borsky*, 2 Tex. Civ. App. 545, 21 S. W. 1011.

In the case of *Lommeland v. St. P., M. & M. R. Co.*, 35 Minn. 412, 29 N. W. 119, the court said:

"In applying this rule a considerable latitude of inquiry is permissible from the nature of the case. The estimate must be based largely upon the condition, stage of growth, and promise of the grain, and the capacity of the land to produce crops; and, in addition to the opinions of witnesses qualified to speak in reference to the extent of the injury and of the value of the

growing crop in its then condition, we think it would be proper to receive evidence of the average product or yield of like crops upon the same and other lands in the neighborhood, under like circumstances and conditions, and also the average market value of such grain, within reasonable limitations as to time, and the expense of harvesting and marketing, to be submitted to the jury under proper instructions by the court. If the estimates are extravagant, the evidence may be sifted upon cross-examination and controverted by witnesses."

In the case of *Phillips v. Terry*, 5 Abb. Prac. N. S. (N. Y.) 327, the court said:

"The plaintiff testified, in regard to injury from the water upon his meadow, that in June, 1858, there was high water over about 10 acres, when the grass was about a foot high and had just begun to head out. He was asked by his counsel, 'Taking that hay as it stood then, what would it yield to the acre?' This was objected to on the ground that it called for the opinion of the witness. I think it was competent to ascertain the facts sought by this inquiry through the opinion of a witness. A person conversant with the growth of grass, and accustomed to compare its appearance in different stages of such growth with its ultimate yield to the acre, may well be said to have such knowledge of that subject as to make him competent of testify how much, in his opinion, a given price examined by him will yield per acre. The facts on which such an opinion is based, like those on which the value of a given article of property depends, are of such a character as not to be capable of being transferred to the mind of a jury so completely and intelligibly as to enable them to form an adequate determination for themselves. *Clark v. Baird*, 9 N. Y. 183, and cases there cited."

In *Railway Co. v. Lyman*, 57 Ark. 512, 22 S. W. 170, the court said:

"Under the ruling next complained of, the plaintiff was permitted to give in evidence his opinion as to the value of the crops at the time of their destruction, and to state as the basis of his valuation the usual yield of the lands in crop seasons similar to that of 1888. The witness being farmer, his opinion was admissible to prove the value of the crop, and it was proper to permit him to state the facts from which his conclusion was arrived at, as these would aid the jury in determining whether his

estimate was correct.  *  *  *  While the damages recoverable could not exceed the actual value of the crops at the date of the injury, with legal interest, it was not improper that the jury, in estimating that value, should consider the probable value at maturity if they believed from the evidence that the crops would have matured but for their loss in the manner alleged in the complaint."

In the case of *Colo. Con. L. & W. Co. v. Hartman,* 5 Colo. App. 150, 38 Pac. 62, the court said:

"But in order to establish the value at the time of the destruction courts are compelled to resort to several methods of computation, and either, or all combined, may afford a fair basis. One might be a year's rental value, with the cost of planting and bringing forward the crop until the time of its loss; another, what the crop would bring in its immature state at a sale; and, a third, the proof of the average yield and the market value of crops of the same kind planted and cared for in the same manner, less the cost of maturing, harvesting, and marketing. While neither would afford positive proof, they would all seem to be proper, and the only way by which a jury could get the necessary data upon which to base a verdict. The question to be determined by the jury was the value of the crop at the time of the destruction. The supposed error, and the only one relied upon, was allowing witnesses to testify 'how much per acre the said crops were worth, in their condition and stage of growth, upon the land at the time of the alleged destruction thereof.' There does not appear to have been any objection to the witnesses for lack of knowledge or competency; no objection that a proper foundation had not been laid. From all that appears, the true value might be arrived at directly in this way. If such was the case, it would be much more satisfactory than by any other method."

See, also, *Grand Rapids Booming Co. v. Jarvis,* 30 Mich. 308; *Whitbeck v. N. Y. Cent. R. Co.,* 36 Barb. (N. Y.) 644.

In the trial court, it does not appear that any estimate of value testified to was based upon the theory of a year's rental value with the cost of bringing forward the crop until the time of its loss, and so it is not necessary to determine whether it is

permissible for a witness qualified as such to give evidence as to the reasonable value of the crop on such basis, and that question is reserved. It does appear, however, that witnesses testified as to the value, such estimate being made on the average yield and market value of crops of the same kind planted and cared for in the same manner in the same community, less the cost of maturing, harvesting, and marketing, and also by stating what the crop would have brought in its immature state at a sale in that community. Such was permissible by the authorities cited from the courts of Texas, Minnesota, New York, Arkansas, and Colorado, and seems also to be in accordance with the great weight of authority.

It follows that the judgment of the lower court must be affirmed.

Dunn, C. J., and Hayes and Turner, JJ., concur; Kane, J., dissents.