SMITH v. CHICAGO, CLINTON & DUBUQUE R. R. Co.

1. **Railroads:** CATTLE GUARDS. Under the provisions of Section 3, Chapter 169, Laws of 1862, a railway company is required to construct cattle guards where the road passes through fences, as well of those dividing lands of the same owner, as those constituting the boundaries between different owners.

2. ———: MEASURE OF DAMAGES. In an action for damages against a railway company for injuries caused to growing crops in consequence of a failure to construct cattle guards, the measure of recovery is the market value of the crops, when matured, less the expense fitting of them for the market from the time of the injury, and diminished by whatever the value of the portion saved, if any, may be.

3. ———: MEASURE OF CARE REQUIRED: NEGLIGENCE. In such a case, plaintiff is not bound to the exercise of extraordinary care to save his crops, even though that might have been successful. Whether he is negligent in his efforts to save them is a question of fact for the jury.

4. ——: RECOVERY FOR WORK AND LABOR: DAMAGES. The owner of the crops may recover a reasonable compensation for time and labor necessarily expended in trying to save his crops from destruction.

5. ——: ——: ——. Where the owner had applied to different persons connected with the railroad to have cattle guards put in and had reason to expect they would be, he was justified in planting his crops in the unprotected field.

*Appeal from Clinton Circuit Court.*

MONDAY, JUNE 15.

THE petition alleges that the plaintiff is the owner of the north-east quarter of, and the east half of, the north-west quarter of Sec. 31, Tp. 83, Range 7, east of the 5th principal meridian; containing in all 240 acres; that said land is and was prior to November 1st, 1872, improved and fenced land; that about 130 acres on the north side are and have been pasture land, used as such for the cattle of plaintiff, and of others who hired pasturage therein; that a good, substantial fence divided said pasture land from the balance of the farm which was cultivated land, thereby preventing the cattle from escaping from the pasture to and upon the cultivated portion of plaintiff's farm.

It is further alleged that in April, 1872, the defendant acquired a right of way for its railroad, over and through plaintiff's said farm—the line of said railroad passing through both the pasture and cultivated portions thereof; that said right of way was acquired by *ad quod damnum* proceedings in the manner provided by law; that the defendant proceeded to construct its railroad upon said right of way, and in November, 1872, commenced operating the same on said line as located upon and through the plaintiff's said premises, and have continued to do so up to the commencement of the action; that at the point on defendant's said road where the same passes through the fence dividing plaintiff's cultivated land from his pasture land, the defendant has failed and refused to construct a cattle guard, thereby throwing open the said fence whereby the cattle kept in the said pasture lands passed through and into plaintiff's said cultivated fields and destroyed the crops growing thereon, in the summer of 1873, for which he claims

damages.  He also claims damages for his trouble and expense in efforts to keep the cattle out of his cultivated fields, and for injuries sustained to fat cattle by being driven out of said fields.

The answer is a general denial.  Upon the issues thus formed, a jury trial was had.  Verdict and judgment for plaintiff.  Defendant appeals.

*S. P. Adams, Walter I. Hayes,* and *Geo. B. Young,* for appellant.

*Ellis & Spence* and *Flint & Darling,* for appellee.

MILLER, CH. J.—The first question presented by the record and discussed by appellant is, whether the defendant was required by the law to put in a cattle guard where its road passes through plaintiff's fence, dividing his cultivated from his pasture lands, the whole being inclosed by outside fences.

1. RAILROADS: cattle guards.

Section 3, of Chapter 169, of the Laws of 1862, being an act entitled " An act in relation to the duties of railroad companies," provides that, "where any railroad runs through any improved or fenced land, said railroad company shall make proper cattle guards on such roads, when they enter or leave such improved or fenced land."

It is insisted by appellant's counsel that this section " refers to outside fences only, and to the land of a particular owner, and has no application to what they call division fences." We find nothing to warrant us in adopting this construction. The language is plain and unambiguous, that where the railroad enters or leaves improved or fenced land, the railroad company is required to make proper cattle guards.

The requirement is not limited to the boundary fences of the land owner, but wherever the road enters or leaves what is inclosed by a fence, a cattle guard must be put in at the place of entry, and one at the place of leaving the fenced land. This is the plain and unmistakable meaning of the language used in the enactment.  The evident intention of the legisla-

ture was that, after the construction of a proper cattle guard at the point where the road ran through a fence inclosing land, the fence and the cattle guard should be a protection to the inclosure, equal to the fence before the road passed through. The object was to prevent cattle from passing through the opening made in the fence by the railroad, which might result in injury to the owner of the inclosed premises. The same reason, requiring cattle guards to be constructed where the road passes through fences on the boundary between several land owners, applies as strongly where the road enters or leaves inclosed fields belonging to the same owner.

The instructions given by the court on this branch of the case embodied the views above stated, and were correct. The refusal to give those asked by defendant, embodying a contrary doctrine, was not erroneous.

II.    The next question, presented in argument, is as to the proper measure of damages for a failure on the part of the railroad company to put in the proper cattle guard.

The court instructed the jury, in substance that if plaintiff's crops were entirely destroyed because of the failure of the
2. ——:  defendant to construct a cattle guard where its
measure of
damages.  road passes through the fence inclosing the crops, the measure of damages " would be the fair market value of said crops when matured and in a marketable condition, less the necessary expense of caring for and fitting said crops for market from the time of the alleged injury; and if said crops were not entirely destroyed, the value of the portion saved should also be deducted from said market value of said crops." The court further instructed the jury that the plaintiff might also recover a reasonable compensation for time and labor necessarily expended in trying to protect and save said crops, and also that he might recover damages for injury, if any, to his cattle, caused by the neglect and refusal of defendant to put in the cattle guard.

The first instruction is just and reasonable, and has the support of authority; see *Chicago & Rock Island R. R. Co., v. Ward*, 16 Ill., 522, and cases cited; *Bucknam v. Marsh*, 12

Maine, 475; *Armstrong v. Smith*, 44 Barb., 120; *Seamans v. Smith*, 46 Id., 320.

If the destruction of the crops was caused by the failure of defendant to put in a proper cattle guard which would have

3. ——:
measure of
care requir-
ed: negli-
gence.

protected the crops from destruction, then the value of the crop, when matured, less the cost of tillage, etc., from the time of the injury, will compensate the defendant for the crops destroyed which he was entitled to, under the 5th section of the above act. A less sum would not do this. But it is urged that the plaintiff should have employed some person to have kept the cattle out of his crops, because he could have done this at a cost less than the value of the crops. If the plaintiff could have prevented the destruction of his crops at a moderate expense, or by ordinary efforts, it was his duty to do so; *Simpson v. City of Keokuk*, 34 Iowa, 568 and cases cited; but he was not required to incur large expense or to make extraordinary efforts. The evidence shows that the injury to the crops might have been prevented by keeping a constant watch during the day time, and also during the night, from the planting of the corn in May until it could be harvested in the fall, a period of four or five months, at a cost of from two to three dollars per day for the wages of a man alone. It is made quite clear by the evidence that nothing short of a constant watch, both day and night, at the place where the railroad passed through the fence, dividing the pasture from the cultivated fields of plaintiff, would have prevented the cattle from going through if they were allowed to remain in the pasture field. The rule of law above stated is not applicable to the state of facts here shown. The case does not come within the rule. To have avoided the injury would have involved a large expense and the exercise of extraordinary efforts. The evidence shows that efforts were made by the plaintiff to keep the cattle from destroying his crops, but without success. Whether they were such as an ordinarily careful and prudent man would have made under the like circumstances, or whether the plaintiff was negligent in his efforts to save his crops from destruction, was properly left to the jury to determine, and they were instructed that " it was the duty of the

plaintiff to use and make reasonable efforts to protect his crops and prevent injury thereto; and for damages resulting from negligence or carelessness on the part of plaintiff, in not making proper and reasonable efforts to protect his said crops and prevent the injury of which he complains, he cannot recover."

This instruction contains a correct statement of the law, applicable to the circumstances of the case. It embodies the doctrine contended for by appellant as to the duty of plaintiff, and it tells the jury that, for any damage sustained by him which was the result of his own negligence, he cannot recover.

III. We think that there was no error in the instruction given to the effect that the plaintiff might recover as damages a reasonable compensation, for time and labor necessarily expended in trying to save his crops from destruction. If he, in the exercise of ordinary efforts to prevent the destruction of his crops, because of defendant's fault, expended money or labor, he should be compensated therefor. This is one of the natural and ordinary consequences of the neglect of the appellant to comply with the statutory requirement to put in the cattle guard, and if plaintiff is not allowed to recover for this, the law fails to compensate him fully for the injury inflicted, while it required at his hands the performance of this duty.

So, also, if his cattle were *necessarily* injured because of the failure of defendant to put in the cattle guard, the plaintiff should, upon the same principle of compensation, be allowed to recover therefor.

IV. It is claimed by counsel for appellant that plaintiff should not have planted his crops, knowing as he did, that they would be destroyed for the want of a cattle guard, where the railroad enters the cultivated field from the pasture, and that he cannot therefore recover for the destruction of the crops so planted. There was evidence tending to show that plaintiff had applied to different persons connected with the railroad to have the cattle guard put in, and that he had reason to expect that it would be so done in time to protect his crops. While there is a conflict of evidence on this point, yet there is

sufficient to warrant the jury in concluding that plaintiff was justified in planting his crops, with the expectation that appellant would construct the proper cattle guard in due time for their protection.

We find no error in the record, and the judgment will therefore be

AFFIRMED.