HENRY HANDFORTH *vs.* WALTER P. MAYNARD & another.

Franklin.   September 16, 1891. — September 22, 1891.

Present: ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Ice Crop — Malicious Destruction — Damages.*

The measure of damages for maliciously destroying an ice crop by drawing off a
pond is the value of the plaintiff's right to harvest the ice upon the pond, and
so make it his property at the time when the ice was destroyed.
Upon the assessment of damages for maliciously destroying the ice in a pond by
drawing off the water, evidence is admissible on the issue of value, in the ab-

sence of a market for the ice, to show its condition, the amount fit for harvesting and the time required to harvest it, the highest and lowest temperature about the time, the cost of cutting, drawing, packing, and covering the ice, its value when placed in the icehouse, and the risks attending the harvesting.

In an action for maliciously destroying the ice in a pond by drawing off the water, where there was evidence as to the weather and the many risks as to harvesting the ice, the judge refused to instruct the jury that the plaintiff could not recover profit beyond the expense which might inure to him from the ice if harvested, or any amount beyond the actual expense to which he had been subjected, but instructed them that the true measure of damages would be the cash value of the ice harvested and deposited upon the shore of the pond, less the expense of harvesting it; and that "to determine that value it would be necessary for them to find upon the evidence the quantity of the ice, the expense of harvesting and depositing it on the shore, the value of the ice so deposited, and then deduct the expense from the aggregate value of the ice on the shore, and the difference would be the amount of damages the plaintiff could recover." *Held,* that this instruction might be construed to mean that the jury were to take into account the risks which might prevent the plaintiff from securing all of the ice; and that the defendant had no ground of exception.

TORT. The declaration alleged that Selina Hawks was the owner of a parcel of land in Greenfield, through which flowed Cherry Rum Brook; that by means of a dam built across the brook below her land a pond of fresh water of the area of about eight acres was formed upon her land, " creating thereon a valuable privilege for cutting and harvesting ice "; that on January 1, 1889, she sold to the plaintiff this privilege for the term of one year; and that the defendants, intending to deprive the plaintiff of the profit of harvesting the ice, opened a gate in the dam and drew off the water, whereby the ice thereon, which the plaintiff was engaged in harvesting, settled into the mud at the bottom of the pond and was destroyed, to the great damage of the plaintiff. The answer contained a general denial, and set up that the defendant's acts were done under the direction of one Warner and one Sanderson, who had a legal right to draw the water from the pond in question.

Trial in the Superior Court, before *Aldrich,* J., who allowed a bill of exceptions, which, so far as material to the points decided, was as follows. It appeared in evidence that the ice in question was formed upon a pond, a part of the waters of which covered land of which Hawks owned the fee; that on January 1, 1889, she sold to the plaintiff the privilege of cutting and storing what ice might form thereon for the term of one year from that date; that the defendants were ice-dealers, and

acted as agents of Warner and Sanderson, who owned the dam by which the pond was created; and that the water was caused to be drawn off regardless of the plaintiff's rights, and for the purpose of destroying the ice. The case was tried as if the action were against Warner and Sanderson. The plaintiff was allowed to introduce in evidence, against the defendants' objection, the condition of the ice at the time the water was drawn off, the amount of ice in condition to harvest, how long it would take to harvest it, the minimum and maximum temperature at about that time, the fair price per ton for harvesting the ice, and the worth of the ice if harvested and placed in the icehouse. One of the plaintiff's witnesses testified, on cross-examination, that many risks attended the harvesting of ice.

The judge instructed the jury that the rule of damages might be stated generally, that, where one party has wrongfully injured, entirely destroyed, or impaired the value of another's property, he must make it good to the party injured; that he must restore to the injured party his property, or the value of that which he has destroyed or impaired; that the true measure of damages in this case, if they found for the plaintiff, would be the market or cash value of the ice harvested and deposited upon the shore of the pond, less the expense of so harvesting and depositing it; and that to determine that value it would be necessary for them to find upon the evidence the quantity of the ice, the expense of harvesting and depositing it on the shore, the value of the ice so deposited, and then deduct the expense from the aggregate value of the ice on the shore, and the difference would be the amount of damages the plaintiff could recover. No objection or exception was taken to this statement of the rule of damages, if the plaintiff was entitled to recover the value of the ice.

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*W. S. B. Hopkins*, for the defendants.

*J. A. Aiken*, for the plaintiff.

BARKER, J. At the hearing, all exceptions were waived except those relating to the rule of damages and the admission of evidence under that rule. The instructions requested were that the plaintiff could not recover the value of the ice harvested and

stacked under cover, or recover profit beyond the expense which might inure to him from the ice if harvested, or any amount beyond the actual expense to which he had been subjected.

The instructions given did not allow the jury to give as damages the value of the ice harvested. It would plainly have been incorrect to instruct them that the plaintiff's recovery was restricted to the expense of harvesting, or to the actual expenses which he had incurred.

The true measure of his damages was the value of his right to harvest the ice upon the pond, and so make it his property at the time when the ice was destroyed and the plaintiff's right made worthless by the defendants' acts. In the absence of a market for ice so situated, evidence was admissible, as tending to show its value and the value of the plaintiff's right, as to the condition of the ice, the amount fit for harvesting, how long it would take to harvest it, the minimum and maximum temperature at about that time, the cost of cutting, drawing, packing, and covering the ice, the worth of ice when placed in the icehouse, and the risks attending the process of harvesting. The exceptions to the admission of evidence bearing upon these points must therefore be overruled.

The remaining exception is that to the measure of damages given by the presiding justice, and to the rules laid down to guide the jury in its application. The instruction was, that the true measure of damages "would be the market or cash value of the ice harvested and deposited upon the shore of the pond, less the expense of so harvesting and depositing it; that to determine that value it would be necessary for them to find upon the evidence the quantity of the ice, the expense of harvesting and depositing it on the shore, the value of the ice so deposited, and then deduct the expense from the aggregate value of the ice on the shore, and the difference would be the amount of damages the plaintiff could recover." The bill of exceptions states further, "No objection or exception was taken to this statement of the rule of damages, if the plaintiff was entitled to recover the value of the ice."

It is to be observed that the instruction does not contain in terms any statement of one element which is essential to the correct assessment of the plaintiff's damages, in that it omits

explicitly to require the jury to consider the risks attending the process of securing the ice. If it is to be so construed as to have permitted the jury to assess the damages without reference to those risks, they may have allowed damages for all of the ice destroyed by the defendants, although it could not have all been secured and stored. If the instruction meant that the true measure of damages would be the market or cash value of so much of the ice as the jury should find would have been harvested and stored but for the defendants' wrongful acts, less the expense of harvesting and depositing it, the ruling would do the defendants no injustice. We have had great difficulty in deciding whether this was the sense in which the ruling was understood by the jury. There was evidence as to the weather and the many risks of harvesting ice. The value of the ice deposited on the shore, and not the value of all the ice, was laid down as the first element of the computation to be made, and the expense was to be deducted from that value.

These considerations, in connection with the additional statement above quoted, tend to the conclusion that the instruction was understood to require the jury to consider, in making their assessment, the risks which might prevent the plaintiff from securing all of the ice.

In the state of the pleadings, even if the plaintiff could not maintain either an action of trover or of trespass *quare clausum*, and if the ice was not his, its value and the expense of securing it both enter into the basis of the assessment of his damages for the wrong done by the defendants, and for which he was entitled to recover under the pleadings and the evidence. *Richards* v. *Gauffret*, 145 Mass. 486. The defendants contended, at the trial, that the value of the ice was entirely immaterial upon the question of damages. While the plaintiff was not, strictly speaking, entitled to recover the value of the ice, the measure of damages contended for by the defendants was so absolutely different from that given in the instructions to the jury, that we are inclined to the opinion that the presiding justice may have fairly understood the defendants to have waived any exception, if the value of the ice was properly the basis of the assessment.

*Exceptions overruled.*