FEARGUES LESTER and DAVID D. LESTER, Respondents, v. THE HIGHLAND BOY GOLD MINING COMPANY, a Corporation, and ROBERT T. WHITE, Appellants.

No. 1533.    (76 Pac. 341.)

1. 'Destruction of Growing Crops: Measure of Damages.
   The measure of damages for the injury or destruction of growing crops is the value of the crops in the condition they were in at the time of their injury or destruction, and not the market value at the time of their maturity or during the market season.[1]

2. Same: Tort for Unliquidated Damages: Interest.
   In tort for unliquidated damages, interest on the damages assessed from the date of the commencement of the action up to the date of the verdict is not recoverable.[2]

(Decided April 14, 1904.)

Appeal from the Third District Court, Salt Lake County.—*Hon. S. W. Stewart*, Judge.

Action to recover damages to growing crops. From a judgment in favor of the plaintiffs, the defendants appealed.

REVERSED.

*Messrs. Sutherland, Van Cott & Allison* for appellants.

*Messrs. Henderson, Pierce, Critchlow & Barrette* and *C. S. Varian, Esq.*, for respondents.

[1] Farr v. Griffith, 9 Utah 416, 35 Pac. 506; N. P. C. Irr. Co. v. Canal Co., 23 Utah 199, 63 Pac. 812.
[2] Nichols v. Railroad Co., 7 Utah 510, 27 Pac. 693.

BARTCH, J.—This is an action to recover for damages to growing crops. The amended complaint herein was filed April 16, 1902, and it was alleged, in substance, that about June, 1899, the defendant company, having erected the Highland Boy smelter, began operations, and thereafter, to the commencement of this suit, reduced large quantities of copper ores, and thereby caused to be emitted, from the smokestack of the smelter, smoke, gases, and fumes charged with various mineral substances, which were carried by the winds and deposited upon the farm of the plaintiffs, about a mile distant from the smelter; that these substances were highly deleterious to vegetable life; and that, as a consequence, the growing crops and trees on said farm were damaged and destroyed. The answer admitted the erection and operation of the smelter, but denied the other material allegations of the complaint. From the record and evidence it appears that the farm of the plaintiffs is situate from one-half to three-quarters of a mile northeast of the Highland Boy smelter, the west end of it being directly north thereof; that about 1 3-4 miles south of the Highland Boy is situated the Bingham Consolidated smelter; that about one-quarter of a mile south of the latter is the United States smelter; that the Bingham Consolidated was in operation during the latter portion of the time the plaintiffs sue for damages, that both the Bingham Consolidated and the United States smelters were in operation since the commencement of this action; that all the smelters were operated for the purpose of reducing ores; that the wind in that locality fluctuates, but that its general direction is north and south; and that the damages sued for were occasioned by the reduction of the ores, which created smoke, dust, gases, and fumes, that were carried by the wind onto the plaintiffs' farm and deposited on their crops and trees, causing them to be injured and destroyed. At the trial, the jury returned a verdict in favor of the plaintiffs for damages in the sum of $2,500, with interest thereon, from the commence-

ment of the action to the date of the verdict, amounting to $259.44. Judgment was thereupon rendered for the sum of $2,759.44, with interest thereon at 8 per cent. from date thereof. The defendants appealed.

From the theory upon which this case was tried by the defense, it appears to be conceded that the plaintiffs are entitled to some compensation for injuries to their crops and trees, but the appellants insist that the court erred in its charge to the jury respecting the measure of damages. That portion of the charge objected to on this point reads as follows: "The plaintiffs in this case are entitled to recover only such damages to their crops of lucerne, potatoes, oats, corn, beets, wheat, and such things as are sued for, as they were worth at the time when destroyed or injured, and at the place where injured or destroyed. In other words, if they were injured or destroyed at or before the time of harvest in the different years respectively, then in arriving at, the damages you must take the market value of such products and crops not later than the prices prevailing at the time of such harvest, or during the market season." This instruction, considered as a whole, is clearly erroneous. The rule stated in the first sentence has the support of authority, but, in attempting to explain it in the last sentence, the court virtually set the rule aside, and misdirected the jury by stating that, in arriving at the damages, they must take the "market value of such products and crops not later than the prices prevailing at the time of such harvest, or during the market season." While, in cases of destruction of growing crops, it is proper and important to introduce and admit evidence showing the kind of crops the land is capable of producing, the kind of crops destroyed, the average yield per acre of each kind on the land in dispute, and on other similar lands in the immediate neighborhood cultivated in like manner, the stage of growth of the crops at the time of injury or destruction, the expenses of cultivating, harvesting, and marketing the crops, and the market value at the time of maturity,

or within a reasonable time after the injury or destruction of the crops, and while all such evidence may be considered by the jury in determining the amount of damages, if any, still the true measure of compensation is the value of the crops in the condition they were in at the time of their injury or destruction, and not the market value at the time of maturity or during the market season. "For destroying or carrying away growing crops, the measure of compensation," says Judge Sutherland, "is their value in the condition in which they were at the time of the trespass." 3 Suth. Damages, sec. 1023. In 3 Sedgwick on Damages, sec. 937, the author says: "In estimating the value of the crop, the prevailing rule seems to be to take its actual value at the time of the trespass, not its probable value, assuming that it would have matured." As to the rule stated in Smith v. Chicago, C. & D. R. R. Co., 38 Iowa 518, that the measure of damages is the "difference between the market value of the crops when ripe and their value in an injured state, less the cost of growing them," the author, in the same section, says: "This rule, however, is objectionable, because it assumes, without proof, that the crops would have come to maturity." In Texas & St. Louis R. R. Co. v. Young, 60 Tex. 201, it was said: "The true measure of damages was the value of the crops at the time they were destroyed. In arriving at that, from the very nature of the question, great liberality in making proof must be allowed, and even the opinions of witnesses qualified by experience to speak upon the subject would be admissible. 1 Wharton on Evidence, 447, 448; 1 Greenleaf, 440, note. But at last the question is, what was the value of the property at the time it was destroyed? That the value of the probable yield at the time the crop would have matured and been gathered is not the true measure is evident, for at any stage in the growth of a crop it requires labor to cultivate and gather it, more or less, as the crop may be advanced, and these elements go into the makeup of the value at maturity. If the crop be de-

stroyed before maturity, the labor of the farmer is not further directed to it, and he is free to embark in other profitable employment. To give the value of a matured and gathered crop would be to give compensation for labor never performed, and for an injury received." The Supreme Court of Colorado, in Colo. Con. L. & W. Co. v. Hartman, 5 Colo. App. 150, 38 Pac. 62, held: "The measure of damages for the destruction of growing crops by water from an irrigation ditch is the value of the crops in the condition they were at the time of the injury." So, in Lommeland v. St. P., M. & M. Ry. Co., 35 Minn. 412, 29 N. W. 119, it was said: "In such cases the general rule appears to be that the damages are to be estimated as of the time of the injury, and the measure of damages is compensation for the value of the crops in the condition they are in at that time." 3 Suth. Damages, sec. 1049; Gulf, C. & S. F. Ry. Co. v. Carter (Tex. Civ. App.) 25 S. W. 1023; Richardson v. Northrup, 66 Barb. 85; Handforth v. Maynard, 154 Mass. 414, 28 N. E. 348; Folsom v. Log-Driving Co., 41 Wis. 602; Seely v. Alden, 61 Pa. 302, 100 Am. Dec. 642; S. & E. T. Ry. Co. v. Joachimi, 58 Tex. 456; Gresham v. Taylor, 51 Ala. 505; Farr v. Griffith, 9 Utah 416, 35 Pac. 506; N. P. C. Irr. Co. v. Canal Co., 23 Utah 199, 63 Pac. 812; 15 Am. Cent. Digest, sec. 281, col. 2013; Little Schuylkill Nav. Co. v. Richards' Adm'r, 57 Pa. 142, 98 Am. Dec. 209.

The appellant also contends that the court erred in instructing the jury that they should allow interest on the damages assessed by them in favor of the plaintiffs from the date of the commencement of the action up to the date of the verdict. This contention appears to be well taken. The action was for a tort, and the damages were unliquidated, and this court, in Nichols v. Railroad Co., 7 Utah 510, 27 Pac. 693, which was an action for a tort, where the damages were unliquidated, and where the jury returned a verdict for so much damages, and so much for interest thereon, held "that there is no authority for the granting of in-

terest in such a case.'' Under the doctrine of that case the instruction respecting interest was erroneous. As a new trial must be granted because of the errors already pointed out, we do not deem it important to discuss and .decide the other questions presented herein, since the same questions may not again arise.

The judgment is reversed, with costs, and the cause remanded with instructions to the court below to grant a new trial. It is so ordered.

BASKIN, C. J., and McCARTY, J., concur.