FORT SMITH SUBURBAN RAILWAY COMPANY *v.* MALEDON.

Opinion delivered April 7, 1906.

1. ACTION—MISJOINDER OF CAUSES.—A complaint which alleged that defendant railroad company acquired a right of way over land of which plaintiff was in possession as tenant, and that another defendant, a contractor employed to construct the railroad, entered the land and destroyed part of plaintiff's crops, without plaintiff's consent, does not misjoin two causes of action, but states a single cause of action for a joint tort for the destruction of crops. (Page 372.)

2. RAILROAD—LIABILITY FOR CONTRACTOR'S TORT.—A railroad company which has authorized and directed a contractor to build its road upon land which it has acquired subject to an existing lease is liable as a joint tort feasor with the contractor and his servants for damages done by them, in the prosecution of the work, to the crops of the lessee. (Page 372.)

3. SAME—LIABILITY FOR CROP DESTROYED—CONTRIBUTORY NEGLIGENCE.—A lessee was not guilty of contributory negligence in planting crops upon the leasehold after a railroad company had filed for record a deed from the lessor for right of way across the land, where the railroad had acquired no right of way as against him. (Page 373.)

4. SAME—DUTY OF OWNER TO PROTECT CROP.—In an action for damages against a railway company for injuries caused to growing crops by throwing down plaintiff's fences, the measure of plaintiff's duty to exert himself to lessen his damages is such care and diligence as a man of ordinary prudence would use under the circumstances. (Page 373.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Styles T. Rowe,* Judge; affirmed.

*Oscar L. Miles,* for appellants.

1.  The record of the deed conveying right of way to the railway company was notice to appellee that it had acquired the right of way. Kirby's Digest, § 762. Under the law the appellee could only recover the fair rental value of the land included in the right of way for the remaining period of his lease. He could not enhance or exaggerate his damages by following up the engineers and planting a crop where they had driven the location stakes for the line of railroad. 67 Ark. 375. If a party can, at a trifling expense or by reasonable exertions, avert the damages caused by the wrongful act of another, it is his duty to do so. If he fails therein, he is entitled to recover only such damages as were not the result of his negligence or omission. 67 Ark. *supra;* 44 Mo. 303.

2.  There was a misjoinder of causes of action and of parties. It is apparent that the contractor to whom was let the construction of the railroad across the leasehold estate could not be held for the taking of the right of way by the railway company, and it is equally true that the latter, having let the construction of its line across the leasehold estate to an independent contractor, could not be held liable for the negligent acts of the employees of that contractor. 52 Ark. 503; 54 Ark. 424. The court therefore erred in permitting the case to proceed jointly against the railway company and the independent contractor for two separate causes of action, and in permitting a joint verdict against them for injuries flowing from separate causes and sources.

*Brizzolara & Fitzhugh,* for appellee.

1.  It is proved that appellee had rented the land long before appellant acquired its right of way, and was in possession thereof. He had the legal right to cultivate the whole field until the railway company had settled with him.

The deed to the right of way in no way described the boundaries of the strip conveyed, the only limitation being that the road should not be built within 50 feet of the improvements on the place.

The measure of appellee's duty was submitted to the jury in the court's fourth instruction, wherein they were told that if plaintiff by reasonable exertions could have averted the damages

caused by defendant's wrongful act it was his duty to do so, and if he failed to perform the full measure of his duty in protecting his crops he could recover such damages only as were not the result of his negligence or omission.   38 Iowa, 518; 43 Iowa, 96; 1 Sutherland on Dam. (3 Ed.), § 90, and cases cited; 63 Tex. 200; 9 S. E. 139; 26 Pac. 576.

2.   Where a railway company acquires a right of way across lands in possession of a lessee, it takes the same subject to the leasehold estate.   54 Ark. 424; 10 S. E. 730; 11 S. E. 839. Until appellee had been settled with for his interest in the right of way, neither of the appellants had any right to enter appellee's enclosure; and when the railway company ordered the construction company to enter and do wrongful and unlawful things, they became trespassers, joint *tort feasors,* each liable for all damages done.   15 Ark. 452; 67 Mo. 118; 4 Ohio St. 399; 39 Ohio St. 477; 3 Elliott on Railroads, 1590-1594; 13 S. E. 278; Cooley on Torts, 644.

BATTLE, J.   This action was brought by Charles E. Maledon against the Ft. Smith Suburban Railway Company and Archer-Foster Construction Company.   The plaintiff, after alleging that he is in possession of certain lands as tenant, alleges in his complaint:

"That the Ft. Smith Suburban Railway Company has acquired a right of way over and across said land without the consent of this plaintiff, who owned a growing crop thereupon at the time of the acquisition of the right of way by said railway from the owner thereof.   That the said railroad company has let or sublet the construction of its railroad across said property to the Archer-Foster Construction Company, and the Archer-Foster Construction Company, in the construction of the said Ft. Smith Suburban Railway over and across said tract of land, has destroyed a crop of cotton, turnips, cabbage and beans belonging to the plaintiff; that part of said crop was destroyed by reason of the actual construction of the road, and the remainder destroyed by the negligently letting down and keeping down of the fence, whereby through their negligence cattle went in upon and destroyed the same, to the plaintiff's damage in the sum of $145. Wherefore plaintiff prays judgment for the said sum of $145 and for his costs, and all other proper relief.

"HILL & BRIZZOLARA,
                    "Attorneys for Plaintiff."

The Ft. Smith Suburban Railway Company, after denying the material allegations in plaintiff's complaint, by way of defense says:

"The Ft. Smith Suburban Railway for further answer says that it acquired a right of way over and across the land set out in plaintiff's complaint on the 24th of January, 1903, and that at that time neither the plaintiff, Charles E. Maledon, nor any one else had planted upon said right of way upon said land any crop or crops of whatsoever nature. And the defendant, the Ft. Smith Suburban Railway Company, charges that, at the time the deed conveying said right of way was placed upon the public records in the Ft. Smith District of Sebastian County, neither the plaintiff, Charles E. Maledon, nor any one else had planted upon said right of way any crop or crops of whatsoever nature; and that whatever crop or crops were planted upon said right of way during the year 1903 were planted there with the full knowledge that the said railway company had acquired a right of way over and across said land, and intended to construct and build its line over said right of way."

And the Archer-Foster Construction Company, after denying the material allegations in the complaint, in a separate answer says:

"For further answer herein, this defendant says that, if the plaintiff was damaged in any manner as set out in his complaint, he was damaged by reason of his own contributory negligence in failing to take proper precautions to prevent the destruction of the said crops. That, with knowledge of the right of way having been acquired by the Ft. Smith Suburban Railway Company through and across said land, he proceeded to plant and cultivate and expend time and labor upon crops upon the right of way so acquired, after being informed of its acquisition by said railway company. And the plaintiff negligently failed and refused to take proper precautions to keep the cattle out of his said crops; and negligently failed and refused to gather said crops at a time when he had an opportunity to do so, to the end that it might not in any manner be destroyed or injured."

On the 16th day of September, 1902, plaintiff leased from

24

Lena Schutheiss the lands mentioned in his complaint for the year 1903 for the sum of $70, and in the same contract, for a different consideration, rented the same land for the remainder of the year 1902, and during the fall of the year 1902 entered into and remained in actual possession during the term of the lease.

On the 24th day of January, 1903, plaintiff's lessor conveyed to Ft. Smith Suburban Railway Company, by quitclaim deed, a right of way one hundred feet wide, over and across the land leased by her to plaintiff. The boundaries of the right of way were in no way described in the deed. The only limitation on the right of way was that the road should not be built within fifty feet of the improvements on the land. This deed was filed for record on the third day of April, 1903.

"Early in April, 1903, plaintiff planted about nine acres of cotton, and thereafter, in season, planted crops of turnips, cabbages and beans."

"In the latter part of October, or early in November, 1903, the defendant, Archer-Forster Construction Company, as subcontractor, in performance of its contract to construct a portion of the line of defendant Suburban Railway Company, without right of entry as against plaintiff, entered these premises, constructed the defendant railway company's roadbed thereon, thereby destroying a portion of these crops, and cut and left down the fencing whereby cattle entered and destroyed the remainder."

Evidence was adduced tending to prove that the value of the crop was $125 or $130.

The evidence as to the trespass is in substance, as follows:

Maledon, the plaintiff, testified: "Archer or his crew came down and cut the fence down after I forbid them, ran their ditches through and covered up my stuff on the right of way; left the fences all open. He came down there, and I tried to get him to keep up the fence. I never did let them go in; came in unknown to me while I was off at work. He came through there afterwards while I was away, drove his men down there, and ran the outfit through my field."

Cross-examination. "Don't know when the company first surveyed its right of way through there. Several surveys were run. They ran one pretty near every day or two. McCarty

made a survey there about the first of April, 1903. Had not planted any cotton at the time of McCarty survey; was breaking up, though. Not certain at the time he ran that survey where they were going.

Q. "After this you say Mr. Archer left the fences down there, and let the stock in. When was it that the stock first got in?"

A. "That was right after breaking this fence down and going through, but what day I could not say. I never saw them put up the fence. I saw the place where the cattle got through and came out. I ran the cattle out part of the time, and the children part of the time. Did not keep count of the times. I built up the fence on the right of way to keep them out. They cut the wire fence on both sides of the right of way, and threw it up from the right of way on both sides—middle fence and outside fence. Mr. Archer told me that he cut it."

Redirect-examination. "I put the fence up every day there for quite a while; had my children running backwards and forwards over the field running stock out. I went down there and built the fence up the best I could, and when they came along they would throw it down. They did that a number of times. There was one string of wire fence around the place, and the other rail."

Mike Donahoe for plaintiff testified: "My brother went around the fence several times, and I think put it up once or twice, and Maledon put it up, and the children put it up. A good many stock were in the field. Saw Maledon and his children drive them out."

H. J. Archer, president of defendant Archer-Foster Construction Company, testified: "Work of construction on these premises commenced October 27, 1903. I went in there against Maledon's wish, as far as I know, as I never consulted him anything about it. Don't know how many times we cut the wire across the right of way. Suppose our men cut it. Anyway they had orders to. Generally cut the wire; come to a wire fence, and cut it in the center, and lay it off on each side, and you can bring it back and fasten it up in the center. Supposed to do it every night. Paid a man for doing it. Don't know whether he did it or not; only have his word for it."

The court, over the objection of the defendants, instructed the jury, in part, as follows: "If you believe that the plaintiff could have by reasonable exertion averted damages caused by the wrongful act of the defendant, then it was his duty to do so; and if you believe he failed in performing the full measure of his duty in regard to protecting his crops, he will be only entitled to recover such damages as were not the result of his negligence or omission. The plaintiff can charge the defendants only for such damages as by reasonable endeavor and expense he could (not) have prevented; and will be entitled, if you believe he was negligent in not protecting his crops, to recover whatever amount of damages he may show has been sustained, and what he could not avert by reasonable exertions."

The jury returned a verdict in favor of plaintiff for $120 for damages, and the defendants appealed.

Appellants contend that there was a misjoinder of parties and of causes in this action; that appellee seeks to recover damages for taking the right of way out of the leasehold estate, and for the negligence of the employees of the construction company in leaving down fences and permitting cattle by reason thereof to destroy the crops of appellee; that the construction company could not be held for the taking of a right of way by the railway company, nor can the railway company be held liable for the negligent act of the construction company. But this is not true. This action was not brought for damages for taking a right of way or property appropriated for public use. Appellants were sued as tort feasors for the destruction of crops. Appellee was lessee of the land in question, and in possession under his lease at the time the right of way was acquired. Appellants had no right to enter the same until he was fully compensated, or consented; and, having no such right itself, the railway company could confer none upon the construction company. In employing and directing the construction company to enter the appellee's field and commence construction, it thereby authorized and procured the commission of the trespasses, and became a trespasser, and liable, with the construction company and its servants, as a joint tort feasor for damages sustained. *Railway Co.* v. *Knott,* 54 Ark. 424; *Ullman* v. *Hannibal & St. J. R. Co.,* 67 Mo. 118;

*Carman* v. *Steubenville & I. R. Co.,* 4 Ohio St. 399; 3 Elliott on Railroads, pp. 1590, 1594.

Appellants insist that appellee was guilty of contributory negligence in planting his crops after the railway company had filed its deed for right of way for record. But this was no reason why he should have refrained from planting and cultivating any part of his farm. He was entitled to the possession of the entire tract of land, and appellants to no part of it. Until they had acquired the right to possession, he had the right to plant such crops in such parts thereof as he saw fit, and no one had any right to interfere with him in so doing.

It is urged by appellants that appellee can recover only such damages to his crops as he could not by reasonable exertions have averted. He should reasonably have exerted himself to lessen his damages. "The measure of the duty is such care and diligence as a man of ordinary prudence would use under the circumstances." The evidence shows that efforts were made by the appellee to keep the cattle from destroying his crops, but without success. "Whether they were such as an ordinary careful and prudent man would have made under the like circumstances, or whether the appellee was negligent in his efforts to save his crops from destruction, was properly left to the jury to determine." *Smith* v. *Chicago Ry.,* 38 Iowa, 518; *Downing* v. *C. R. Ry.,* 43 Iowa, 96; 1 Sutherland on Damages (3 Ed.), § 90, and cases cited

Judgment affirmed.

HILL, C. J., being disqualified, did not participate.