UNITED STATES SMELTING CO. v. SISAM.

(Circuit Court of Appeals, Eighth Circuit. October 21, 1911.)

No. 3,056.

*(Syllabus by the Court.)*

1. DAMAGES (§ 112*)—MEASURE OF DAMAGES—INJURIES TO CROPS.

The measure of damages to a growing crop by a wrongful act which destroys it is its value at the time and place of its destruction.

The measure of the damage to a growing crop injured, but not rendered worthless, is the difference between the value of that crop before and after the injury at the time and place thereof.

Where a crop is injured from time to time throughout its growing season until its maturity by sulphurous fumes and their products, but is not destroyed so that it is cultivated throughout the season, harvested and marketed, the damage to it may be lawfully measured under these rules by the difference between the value at maturity of the probable crop, if there had been no injury, and the value of the actual crop at that time, less the expense of fitting for market that portion of the probable crop which was prevented from maturing by the injury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 281–283; Dec. Dig. § 112.*]

2. DAMAGES (§ 174*)—EVIDENCE—INJURIES TO CROPS.

Evidence of the kind of crop the land will ordinarily yield, of the stage of the crop's growth when injured or destroyed, of the average yield per acre of similar land in the neighborhood, the crop of which was cultivated in the same way and was not injured, of the market value of the crop injured, and of the market value of the probable crop without the injury at the time of maturity, of the expense that would have been incurred after the injury in fitting for market the portion of the probable crop the wrongful act prevented from maturing, of the time of the injury and of the circumstances which conditioned the probability of the matur-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing of the crop at that time in the absence of the injury, is competent, and may be weighed by the jury to find the damage to a growing crop at the time of its injury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 462–467; Dec. Dig. § 174;* Railroads, Cent. Dig. § 1726.]

3. NUISANCE (§ 50*)—COMPENSATORY DAMAGES—ELEMENTS.

The owner of a residence which is rendered inconvenient, uncomfortable, and unhealthy as a home by the nuisance of sulphurous fumes and their products thrown upon and into it by another may prove and recover in an action therefor the damages he suffers himself from the discomfort and sickness thereby inflicted upon his wife and the other members of his family who live with him therein, although he may not, and his wife alone may, maintain the cause of action for the direct personal injury to her.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. §§ 118–127; Dec. Dig. § 50.*]

*(Additional Syllabus by Editorial Staff.)*

4. NUISANCE (§ 49*)—ACTION FOR DAMAGES—EVIDENCE.

In an action for injury to crops by sulphurous fumes, the fact that growing crops of apples and other fruits were destroyed before maturity, and there was no evidence what expense was saved to plaintiff in their cultivation from the time their destruction was patent to the time when they would mature, does not show that the plaintiff was not entitled to recover any damages nor that his recovery should be limited to nominal damages, where there was evidence that plaintiff cultivated to maturity crops of potatoes, and their yield was only 100 bushels to the acre, when it probably would have been 300 bushels if the crops had not been injured, that the market value of the potatoes at the time of their maturity was 60 cents per bushel, and that the expense of harvesting and marketing them was 10 cents per bushel.

[Ed. Note.—For other cases, see Nuisance, Dec. Dig. § 49.*]

5. NUISANCE (§ 53*)—ACTION FOR DAMAGES—QUESTION FOR JURY.

In an action for injury to crops from sulphur fumes, evidence *held* to authorize submission to the jury of the question what proportion of the fumes from different smelters was from that of the defendant.

[Ed. Note.—For other cases, see Nuisance, Dec. Dig. § 53.*]

In Error to the Circuit Court of the United States for the District of Utah.

Action by Joseph H. Sisam against the United States Smelting Company. From a judgment for plaintiff, defendant brings error. Affirmed.

Herbert R. Macmillan (Andrew Howat, on the brief), for plaintiff in error.

J. W. Stringfellow (Brigham Clegg and Zane & Stringfellow, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. Joseph H. Sisam, the plaintiff below, recovered a judgment against United States Smelting Company, a corporation, for $750 damages caused to his growing crops of lucerne, grain, vegetables, fruits, and berries by the sulphurous fumes emitted from its smelter during the years 1903, 1904, 1905, and 1906, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

$50 on account of the discomfort, sickness, and inconvenience inflicted upon him, his wife, and the other members of his family by the nuisance these fumes maintained in and about his home. The Smelting Company sued out a writ of error, which presents its complaints of the course of the trial which its counsel have reduced to three: (1) That incompetent evidence of damages resulting from the injuries to the crops was received and a wrong rule for their measurement was given to the jury; (2) that there was no substantial evidence to sustain the recovery of such damages; and (3) that under the law the plaintiff could not lawfully prove or recover for injury to the health and comfort of his wife.

[2] The specifications of error on which they rely to sustain their complaint that incompetent evidence of damages to the crops was received are (a) that after the plaintiff had introduced evidence that the fumes from the defendant's smelter injured his crops of potatoes in the year 1903 from time to time when the wind permitted them to float over his land throughout the growing season of the crop, and that he raised only 100 bushels to the acre, and would have raised 350 bushels to the acre if the fumes had not injured his crops, the court permitted him to testify what the value of potatoes was that year at the time of harvesting and gathering them over the objection that the market value at the time the injury was inflicted was the only competent evidence of value; (b) that. after similar evidence regarding the plaintiff's crop of potatoes in 1904 had been given, like testimony of their market value was received; and (c) that after like testimony regarding the plaintiff's crop of potatoes in 1905 had been given similar evidence of their market value was admitted. But there was no error in these rulings because at the time they were made the evidence was that the injury to the respective crops of potatoes from the fumes was continuous, though intermittent, throughout each growing season, and hence that it did not cease until the potatoes matured. The injury to each crop was not done, it was not finished, until the crop ceased to grow and when the crop ceased to grow the time for gathering and harvesting it had arrived. Conceding, therefore, that the time for measuring the damages was when the injury was done, the testimony of the market value of the potatoes at the time of the gathering and harvesting which the court below received was at that time.

[1] The alleged error on which counsel rely to sustain their contention that the court gave to the jury the wrong rule for the measurement of the damages to the crops is that it charged the jury that the general measure of damages to growing crops by wrongful acts was the depreciation of the market price thereof caused by the acts at the time and place of the injury; that this rule could not be applied; that crops growing rarely have any market value; that the complicated circumstances of this case required them to consider the entire damage done to the entire crop injured in each year by the fumes; that this injury took place during the growing seasons from day to day so that necessarily their attention must be directed to some other period of time than the time of the injury; that the

other time to which they should direct their attention was the harvest time when the crop first had a market value and to determine the extent of the plaintiff's injury they should consider what crop the plaintiff would have raised in each year if there had been no fumes from the smelter; that they should then ascertain the market value of that crop at the time when it first had a market value at the nearest place where it had such a value; that they should deduct from that sum the market value of the crop the plaintiff actually raised, and that they should take from the remainder the expense the plaintiff saved because he did not raise, harvest, or gather that portion of the crop he would have raised which he was prevented from raising by the fumes, and that the result would be the amount of damage to the crop.

It will be noticed that in this charge the court treated the crop of the plaintiff in each season as one and indivisible, and, considered in this way, the injury to it did not cease until its maturity, for the fumes diminished but did not destroy his crops of potatoes, wheat, beets, oats, and lucerne and he harvested them, while some of his crops of berries and fruits were destroyed before maturity. If the request had been made that the jury should be instructed to consider and find separately the damage at the time of their destruction caused by the destruction of the specific crops no part of which matured and that specific rules for the measurement of that damage should be given to the jury and this request had been denied by the court, questions would have been presented in this case which are not now here. This is a court for the correction of the errors of the court below, and that court commits no errors upon questions upon which it does not rule. No request was made in this case of the character which has been mentioned and none that a more specific charge upon the subject of the measure of damages should be given, and the only objection urged or exception taken was that the court instructed the jury to find the value of the probable crop and the actual crop in each season at their respective maturities, instead of at the time when the injury was inflicted. It is a complete answer to this criticism that the injury was inflicted at different times during the growing seasons when the direction of the wind and the condition of the atmosphere permitted the fumes and their products to settle on the crops, and this injury was not completed in any year until the crop of that year matured.

The true measure of the damages to a growing crop by a wrongful act which destroys it is its value at the time and place of the destruction. And the true measure of the damage to a growing crop injured, but not rendered worthless by such an act, is the difference between the value of that crop before, and its value after, the injury at the time and place thereof. Sedgwick on Damages, 937. It is easy to announce this rule, but it is more difficult to determine what evidence shall be considered and what effect that evidence shall have in determining these values and the damage. The stronger reasons and the great weight of authority are that evidence of the kind of crop the land will ordinarily yield, of the stage of the crop's growth when injured or destroyed, of the average yield per acre of similar land in

the neighborhood, the crop of which was cultivated in the same way and was not injured, of the market value of the crop injured and of the market value of the probable crop without the injury at the time of maturity, of the expense that would have been incurred after the injury in fitting for market the portion of the crop the wrongful act prevented from maturing, of the time of the injury, and of the circumstances which conditioned the probability of the maturing of the crop at that time in the absence of the injury, is competent and may be weighed by the jury to find the damage to a growing crop at the time of its injury. Lester v. Mining Co., 27 Utah, 470, 76 Pac. 341, 101 Am. St. Rep. 988; Teller v. Bay & River Dredging Co., 151 Cal. 209, 90 Pac. 942, 944, 12 L. R. A. (N. S.) 267; Dennis v. Crocker-Huffman Land & Water Co., 6 Cal. App. 58, 91 Pac. 425, 429; Little Rock & Fort Smith R. Co. v. Wallis, 82 Ark. 447, 102 S. W. 390, 392; Risse v. Collins, 12 Idaho, 689, 87 Pac. 1006, 1008; Hunt v. St. Louis, I. M. & S. R. Co., 126 Mo. App. 261, 103 S. W. 133; Berard v. Atchison & N. R. Co., 79 Neb. 830, 113 N. W. 537, 538; Kansas City, M. & O. Ry. Co. v. Mayfield (Tex. Civ. App.) 107 S. W. 940, 941; International & Great Northern R. R. Co. v. Pape, 73 Tex. 501, 11 S. W. 526, 527; Gulf, C. & S. F. Ry. Co. v. McGowan, 73 Tex. 335, 11 S. W. 336; Colorado, Consolidated L. & W. Co. v. Hartman, 5 Colo. App. 150, 38 Pac. 62, 63; Shotwell v. Dodge, 8 Wash. 337, 36 Pac. 254, 256; Galveston, H. & S. A. Ry. Co. v. Borsky, 2 Tex. Civ. App. 545, 21 S. W. 1011, 1012; Smith v. Chicago, Clinton & Dubuque R. R. Co., 38 Iowa, 518, 521; Jones & Jones v. Cooley Lake Club, 122 Mo. App. 113, 98 S. W. 82; Anderson v. St. Louis, I. M. & S. R. Co., 129 Mo. App. 384, 108 S. W. 605, 607.

There are authorities that damage to growing crops at the time they are injured or destroyed may not be measured by the jury by the difference between the market value at the maturity of the probable crop without the injury and the value of the injured crop less expense of fitting for market the portion of the probable crop which did not mature. Lester v. Mining Co., 27 Utah, 470, 472, 76 Pac. 341, 101 Am. St. Rep. 988; Burnett v. Great Northern Ry. Co., 76 Minn 461, 79 N. W. 523, 524; Ward v. Chicago, M. & St. P. Ry. Co., 61 Minn. 449, 63 N. W. 1104; Byrne v. Minneapolis & St. L. Ry. Co., 38 Minn. 212, 36 N. W. 339, 8 Am. St. Rep. 668; St. Louis, I. M. & S. Ry. Co. v. Yarborough, 56 Ark. 612, 20 S. W. 515, 516; St. Louis, I. M. & S. Ry. Co. v. Lyman, 57 Ark. 512, 22 S. W. 170, 171; Little Rock & Ft. Smith Ry. Co. v. Wallis, 82 Ark. 447, 102 S. W. 390, 392; Teller v. Bay & River Dredging Co., 151 Cal. 209, 90 Pac. 942, 944; Dennis v. Crocker-Huffman Land & Water Co., 6 Cal. App. 58, 91 Pac. 425, 429; Risse v. Collins, 12 Idaho, 689, 87 Pac. 1006, 1008; Carter v. Wabash R. R. Co., 128 Mo. App. 57, 106 S. W. 611; Hunt v. St. Louis, I. M. & S. R. Co., 126 Mo. App. 261, 103 S. W. 133; Berard v. Atchison & N. R. Co., 79 Neb. 830, 113 N. W. 537, 538; Gulf, C. & S. Ry. Co. v. Carter (Tex. Civ. App.) 25 S. W. 1023; Kansas City, M. & O. Ry. Co. v. Mayfield (Tex. Civ. App.) 107 S. W. 940, 941; Hays v. Crist, 4 Kan. 350, 351. There are also decisions that such damage may be so measured. Shotwell v. Dodge, 8 Wash.

337, 36 Pac. 254, 256; Galveston, H. & S. A. Ry. Co. v. Borsky, 2 Tex. Civ. App. 545, 21 S. W. 1011, 1012; Smith v. Chicago, Clinton & Dubuque Ry. Co., 38 Iowa, 518, 521; Jones & Jones v. Cooley Lake Club, 122 Mo. App. 113, 98 S. W. 82. The majority of the decisions that hold that such damage may not be so measured adhere to the true rule that evidence of the value at maturity of the probable crop after the injury, of the value of the injured crop at that time, and of the expense of fitting for market the portion of the probable crop that did not mature is competent, and should be considered by the jury in determining the damage to the growing crop at the time of the injury. The only conceivable reason for the admission of such evidence to the jury is thereby to present to them a basis, and often the best and the only substantial basis, for their finding of the damage to the growing crop at the time of the injury, and the rational meaning as well as the actual effect of these decisions is that the difference between the values at maturity of the probable crop after the injury and the actual crop, less the cost of fitting for market the portion of the probable crop which did not mature does not alone fix the measure of the damage to the growing crop at the time of the injury, but that this amount, the probability at the time of the injury in view of all the circumstances of each case, that this amount would have been realized by the owner if the injury had not been inflicted in addition to his actual realization from his crop, and the fact, if that be the fact, that the injury was inflicted some time before the time of the maturity of the crop should all be considered by the jury, and from all of these facts and circumstances, and not from this amount alone, they should find the amount of the damage which the owner sustained to his growing crops at the time of the injury. This is a reasonable and practical rule for the measurement of such damages. It is not in conflict with the general current of authority, and it is a necessary and natural deduction from the established rule that the value at maturity of the probable crop, the value of the actual crop, and the expense of fitting for market that portion of the probable crop which does not mature is competent evidence for the jury to consider in determining the damage to the growing crop at the time of its injury. And in view of the continuance of the injury in this case to each season's growing crop as a whole until that crop matured, and the time for harvesting and marketing had arrived, the court committed no error in its instruction to measure the damage by the difference between the value of the probable crop and the value of the actual crop at that time, less the expense of fitting for market that portion of the probable crop which did not mature.

[4] The next contention of counsel for defendant is that their motion for a directed verdict and their motion for a verdict for nominal damages only should have been granted because the plaintiff produced no evidence of the cost of cultivating to maturity that portion of the probable crop which was prevented from maturing by the fumes of the smelter, and because the proof was that the damage to the crops was caused by the fumes from four smelters only one of which was operated by the defendant, and there was no substantial

evidence what part of this damage was caused by the smelter the plaintiff operated. They claim that there was no substantial evidence of any definite amount of damages in this case because the proof was that the growing crops of apples, cherries, pears, and berries were destroyed long before the time of their maturity, and there was no substantial evidence what expense of cultivating these crops from the time when their destruction was patent until the time of their maturity was saved to the plaintiff by their destruction. Conceding that this was the proof and conceding that without such proof of expense the plaintiff was entitled to no damage on account of the destruction of these specific crops, the conclusion that there was no substantial evidence of damage in the case, and that the court should have directed a verdict for the defendant or should have limited the plaintiff's recovery to nominal damages, does not follow. It does not follow because there was plenary proof that in 1904 the plaintiff carefully cultivated to maturity four acres of potatoes, that his crop would probably have been 300 bushels to the acre if it had not been injured by the fumes from the smelters, that it was only 100 bushels to the acre, that the market value of potatoes at the time of their maturity was 60 cents per bushel, and that the expense of harvesting and marketing them was 10 cents per bushel. The expense of cultivating in the same way four acres of potatoes when they produce 100 bushels per acre is the same as when they produce 300 bushels per acre. Here, therefore, was substantial evidence of facts from which the jury could lawfully find a definite amount of actual damage to the plaintiff's crop of potatoes in the year 1904. The record in hand contains similar evidence regarding the plaintiff's crops of potatoes in each of the years 1903, 1905, and 1906, and relative to each of his crops of lucerne, wheat, oats, and beets. The result is that the contention that there was no substantial evidence of a definite amount of damage to plaintiff's crops because there was no evidence of the expense of cultivating a few of them between the times of their respective destructions and their maturities, is untenable, for the reason that there was ample proof that he had many other crops that he carefully cultivated to maturity and from which he obtained substantial returns, though much diminished by the fumes of the smelters, and it was as expensive to cultivate these crops to raise the less amounts they produced as it would have been in the absence of the fumes from the smelters to cultivate the land to produce the probable crops without the injury.

[5] The proof was that the fumes of each of four smelters contributed to the injury to the plaintiff's crops. These smelters were the United States, the Bingham, the Highland Boy, and the American. The plaintiff owned and operated the United States, and the other three were owned and operated by strangers to this action. Was there any substantial evidence what part of the injury to the crops of the plaintiff was caused by the fumes from the United States? There was proof of the distance and direction of each of the smelters from the plaintiff's land, that the United States and the Bingham were about a mile and a half westerly, the Highland Boy about two and one-third miles northwesterly, and the American about three miles northerly

from the plaintiff's land. There was proof of the directions and durations of the winds during the growing seasons of the crops, there was testimony of witnesses that a larger part of the injury by the fumes from the smelters was inflicted by those from the United States, and there was the testimony of Prof. Jones, who had studied the effect of fumes from smelters for 17 years, that the injuries to crops from such fumes decreased under like conditions inversely as the squares of the distances of the crops from the smelters, and there was testimony tending to show the portion of the injury to the plaintiff's crops inflicted by the fumes from the smelter which the defendant owned and operated. Notwithstanding all this evidence, counsel for the defendant argues that the plaintiff might have proved the number of tons of ores smelted and the number of tons of sulphur thrown from the stacks of each of the smelters during the growing seasons of the four years under consideration, and that he might thereby have presented accurate and reliable testimony of the proportion of the injury caused by each of the smelters. But the amount of sulphur thrown from the stacks of each of the smelters would not alone determine the proportion of injury which the fumes from those respective smelters inflicted upon the plaintiff's crops. The amount of that injury would still be conditioned by the distances of the respective smelters from the land, by the directions and durations of the winds during the growing seasons, and by the humidity of the atmosphere. Moreover, the question here is not whether or not the plaintiff produced the best or the most reliable, or all the evidence of which this issue was susceptible. It is, Was his evidence, which is conceded to have been competent and material, so slight, indefinite, and insubstantial that the jury could not lawfully be permitted to find from it the portion of the damage to the crops of the plaintiff which the fumes of the defendant's smelter caused? A careful reading and thoughtful consideration of all the evidence upon this subject has forced our minds to the conclusion that there was evidence upon this issue in this case so substantial and definite that the court below fell into no error in submitting it to the jury.

[3] In the second count of his complaint the plaintiff alleged that he resided on his land during the years 1903, 1904, 1905, and 1906 with his family, that the dust, fumes, and gases from the defendant's smelter were unpleasant and distressing to him, his wife and family, and that they caused them great discomfort and impaired their health, and he prayed for damages on this account for the sum of $1,000 and recovered $50. On the trial of the case the court permitted the plaintiff to prove over the objection that he had no cause of action for any damages to his wife or family by reason of the alleged nuisance, that she was made ill by it, and the court charged the jury that, if the plaintiff and if the members of his family living with him on the land were caused discomfort in the way of coughs and other ailments by the fumes from defendant's smelter, the company must respond in damages therefor. To this charge the defendant excepted on the ground that it was not liable to respond to the plaintiff for the personal discomfort of the members of his family and it specifies

each of these rulings as error. They present this question: May one whose residence is made uncomfortable and unhealthy by a nuisance prove that his wife and other members of his family who lived with him therein were made uncomfortable and ill thereby and recover damages therefor? Counsel for the company contend that the discomfort and illness of the wife is an injury personal to her, that under the statutes of Utah, where this cause of action arose, a husband cannot maintain an action for a personal injury of his wife (Comp. Laws Utah 1907, § 1201; Code §§ 2902, 2904; Musselman v. Galligher, 32 Iowa, 383, 384; Long v. Pennsylvania R. R. Co. [C. C.] 149 Fed. 598; Mosier v. Beale (C. C.) 43 Fed. 358), and that, therefore, he cannot prove and recover any damages in an action for a nuisance which renders the residence of himself and family unhealthy or uninhabitable because the nuisance makes his wife and children who live in it with him sick and miserable. But, conceding the premises, does the conclusion follow? Although a husband may not maintain an action for a personal injury to his wife, he may maintain such an action for the consequences to himself of such an injury, such as the loss of her services and the expense of medical attendance upon her. Matthew v. Railroad Co., 63 Cal. 450, 451; McDevitt v. City of St. Paul, 66 Minn. 14, 68 N. W. 178, 33 L. R. A. 601.

The plaintiff's second cause of action in this case is not for the personal injury to his wife and to the members of his family inflicted by the fumes of the smelter. It is for the direct injury those fumes inflicted upon him by rendering his home inconvenient and uncomfortable and his wife and the other members of his family who were living with him ill and wretched. He had the right to live and to support his wife and family in his home upon his land. He had the right to breathe and to have his wife and family breathe air in and about his home, the pure air that was necessary to their lives, their health, and their comfort. Is it not an injury to him that this air was so polluted by noxious fumes and gases that it made his wife suffocating and sick and his home, which he had established for the comfort of himself, his wife and family, an abode of misery? If a stranger establishes and maintains a nuisance in the absence of the owner which makes the members of his family ill and drives them from his home, may he recover no damages because he was not physically hurt?

In Baltimore & Potomac R. R. Co. v. Fifth Baptist Church, 108 U. S. 317, 328, 335, 2 Sup. Ct. 719, 27 L. Ed. 739, the church, a corporation, brought an action against the railroad company for damages caused by the maintenance of an engine house and machine shop near its house of worship. The court charged the jury that it was doubtful whether or not the alleged nuisance had depreciated the value of the plaintiff's property, but that, although the property had increased in value, the congregation would be entitled to damages because of the inconvenience and discomfort they had suffered from the use of the shop, and that this discomfort was the primary consideration in allowing damages in that action for the nuisance. This in-

struction was assailed because, in the language of counsel for the railroad company, "it told the jury it might assess damages against the railroad company on behalf of the church corporation for the personal inconveniences and discomforts suffered by the individuals worshipping in the church." But the Supreme Court sustained it and said:

"The plaintiff was entitled to recover because of the inconvenience and discomfort caused to the congregation assembled, thus necessarily tending to destroy the use of the building for the purposes for which it was erected and dedicated. The property might not be depreciated in its salable or market value, if the building had been entirely closed for those purposes by the noise, smoke, and odors of the defendant's shops. It might then, perhaps, have brought in the market as great a price to be used for some other purpose. But, as the court below very properly said to the jury, the congregation had the same right to the comfortable enjoyment of its house for church purposes that a private gentleman has to the comfortable enjoyment of his own house, and it is the discomfort and annoyance in its use for those purposes which is the primary consideration in allowing damages. As with a blow on the face, there may be no arithmetical rule for the estimate of damages. There is, however, an injury, the extent of which the jury may measure."

If a corporation may recover damages because the discomforts of individuals seeking to worship in its building tend to destroy the use of its church for the purposes for which it was erected, may not a householder recover damages because the discomforts of his wife and the other members of his family caused by a nuisance tend to destroy the use of his home and farm for the purposes for which he obtained and maintains it? The following authorities sustain the court below in its affirmative answer to that question: Pierce v. Wagner, 29 Minn. 355, 13 N. W. 170; Friburk v. Standard Oil Co., 66 Minn. 277, 68 N. W. 1090; Mills v. Hall & Richards, 9 Wend. (N. Y.) 315, 316, 24 Am. Dec. 160; Kearney v. Farrell, 28 Conn. 317, 73 Am. Dec. 677; Missouri, K. & T. Ry. Co. v. Anderson, 36 Tex. Civ. App. 121, 81 S. W. 781, 788; Story v. Hammond, 4 Ohio, 376; Ellis v. K. C., St. J. & C. B. R. R. Co., 63 Mo. 131, 134, 21 Am. Rep. 436. And the conclusion is that the owner of a residence which is rendered inconvenient, uncomfortable, and unhealthy as a home by the nuisance of sulphurous fumes and their products thrown upon it by another may prove and recover in an action therefor the damages he suffers himself from the discomfort and sickness thereby inflicted upon his wife and the other members of his family who lived with him in his residence, although he may not, and his wife alone may, maintain the cause of action for the direct personal injury to her.

The judgment below must be affirmed, and it is so ordered.